**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| AVIVA BUCK-YAEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23CV492 JAR |
| ) | |
| WASHINGTON UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss. ECF No. 16. Plaintiff

filed her response in opposition, and Defendant filed a reply to her response. This Motion is fully

briefed and ready for disposition. For the reasons set forth below, Defendant's Motion will be

granted in part and denied in part.

### Background and Facts

On April 18, 2023, Plaintiff Aviva Buck-Yael filed this employment discrimination

action against Defendant Washington University alleging discrimination and harassment on the

basis of religion, in violation of Title VII, 42 U.S.C. § 2000e-2, and retaliation, in violation of

Title VII, 42 U.S.C. § 2000e-3(a).

Plaintiff's Amended Complaint [ECF No. 13], in pertinent part, alleges the following:[1]

In October 2014, Plaintiff was hired by Defendant as a Linux Systems Administrator. As

part of Plaintiff's employment negotiations, Defendant granted her religious accommodations

request so she could practice her Orthodox Jewish Faith. These accommodations included the

ability to take unpaid leave to celebrate significant Jewish holidays and to work from home on

---

[1] Unless otherwise noted, all facts in this section are alleged in Plaintiff's Amended Complaint and accepted as true for purposes of this motion only. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

Fridays to maximize her work hours before sundown in observance of the Sabbath. Plaintiff alleges that her religious accommodations came at no cost and minimal burden to Defendant. When Plaintiff was promoted to REDCap Application Administrator in 2017, Defendant reaffirmed her religious accommodations because it caused them no inconvenience.

In November 2018, Plaintiff alleges the discrimination began when Defendant hired a new project manager, Laura Jaske, to assist the REDCap team. Plaintiff further alleges in one instance that Jaske, in front of colleagues, dismissed Plaintiff's input as intrusive and ignored her feedback, prompting Plaintiff to complain to her supervisor about Jaske's apparent bias against her. While resolution of the issue was pending, Rachel Komeshak became Plaintiff's new supervisor. Komeshak agreed to speak with Jaske, but instead issued Plaintiff a written warning on February 12, 2019. The warning was allegedly based on a retaliatory complaint by Jaske.

Following the warning, Plaintiff alleges that Komeshak marginalized her, terminated their weekly one-on-one meetings, and accused Plaintiff of negative intentions. For example, Komeshak weaponized the lack of clarity in Plaintiff's job description and asked why she even worked at the University, stating it was unclear how she contributed. Additionally, Komeshak denied Plaintiff the opportunity to attend the REDCap Conference, which she had attended the two previous years. Plaintiff offered to cover her own expenses and be unpaid while at the conference, but Komeshak still refused.

In October 2019, around the Jewish High Holidays, Plaintiff alleges that Komeshak arbitrarily withdrew the religious accommodations Plaintiff had enjoyed since 2014. If Plaintiff wanted to continue practicing her religion, she would have to deplete her vacation time instead of using unpaid leave to celebrate significant Jewish holidays, and she would have to work longer hours Monday through Thursday to leave on time to be home by sundown on Fridays instead of getting to work from home.

On November 15, 2019, Komeshak issued Plaintiff a second and final written warning, claiming that an email sent by Plaintiff had not been authorized by management as required. The manager in question stated Plaintiff had obtained proper approval and followed protocol. Finally, Komeshak told Plaintiff that her colleagues had described Plaintiff as condescending and unhelpful, but when Plaintiff asked her colleagues about this, they denied having said such things.

Plaintiff alleges that she was distraught by Komeshak's repeated attempts to sabotage and undermine her, so she sought assistance through Defendant's Human Resources (HR) department. HR provided her with two options through Defendant's Formal Review Process. She could petition to have the two written warnings removed from her file, or she could request to be assigned to a new manager. Plaintiff then consulted with her colleagues to assess the two options. In December 2019, Komeshak heard that Plaintiff was attempting to be reassigned to a new manager and threatened that Plaintiff should avoid the appearance of creating a hostile work environment or else there would be consequences. Two weeks later, Komeshak terminated Plaintiff, citing the two previous written warnings and numerous "counselings." Plaintiff alleges that Defendant engaged in this conduct to harass her because of her religion.

On March 2, 2020, Plaintiff met with Defendant's Dean of the University to appeal her termination and request reinstatement. Defendant's Dean failed to respond to Plaintiff's follow-up on July 13, 2020, or her attorney's follow-up on September 15, 2020, regarding her reinstatement request.

Accordingly, Plaintiff filed this action alleging claims under Title VII for discrimination (Count I) and harassment (Count II) on the basis of religion and retaliation in violation of Title VII (Count III).

Defendant filed the instant motion, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), requesting the Court to dismiss Plaintiff's Amended Complaint.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, Plaintiff's obligation to provide the grounds of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

**Discussion**

Discrimination on the Basis of Religion (Count I)

Defendant argues that Plaintiff's Title VII discrimination claim is barred because Plaintiff did not administratively exhaust this claim, and the Court lacks subject matter jurisdiction pursuant to Rule 12(b)(2). Defendant asserts even if Plaintiff exhausted this claim, it still fails to state a cognizable claim because she did not allege that Defendant had an employment requirement that conflicted with her religious beliefs, nor did she allege that she was subjected to an adverse employment action for failing to comply with an employment requirement contrary to her religious beliefs. In her response, Plaintiff claims that she exhausted her administrative remedies and that she demonstrated a prima facia case of Title VII religious discrimination.

*Failure to Exhaust*

As an initial matter, Plaintiff's EEOC Charge of Discrimination ("EEOC charge") was not attached to her Complaint, and Defendant attached it to the instant motion. *See* ECF No. 17-1. When considering a motion to dismiss under Rule 12(b)(6), a court may consider "[d]ocuments necessarily embraced by the pleadings," meaning "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (holding that such documents may be considered on a 12(b)(6) motion); *see also, Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (holding the same as to "documents incorporated into the complaint by reference.") Thus, the Court will consider this document because the EEOC charge is specifically referenced in the Complaint, and its authenticity is not in dispute.

To exhaust administrative remedies under Title VII, Plaintiff must: (1) timely file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and establish the facts and nature of the charge, and (2) receive notice of her right to sue from the EEOC. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citing 42

U.S.C. § 2000e-5(b), (c), (e)). Plaintiff must file a charge with the EEOC within one hundred and eighty days after "the alleged unlawful employment practice" occurred, or within 300 days after the alleged unlawful employment practice if she initially instituted proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1). "Unlawful employment practices" are defined in other subsections of Title VII and include "numerous discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 111 (2002). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id*. at 114 (internal citation omitted). Administrative remedies must be exhausted as to each individual unlawful employment practice. *See id*. at 114–15 (treating each discrete discriminatory action separately).

In her EEOC charge, filed on October 13, 2020, under the section labeled "discrimination based on my religion," Plaintiff alleges that "Ms. Komeshak targeted [her] because of [her] religion by arbitrarily rescinding the religious accommodations that [she] had enjoyed throughout [her] employment with the University." ECF No. 17-1 at pg. 4. Her termination is not mentioned in this section. Under the section labeled "[h]arassment and termination in retaliation for discussing the terms and conditions of [her] employment with colleagues," Plaintiff states that she was denied going to the REDCap Conference, she was issued two warnings by Komeshak, and she was then terminated after speaking with her co-workers regarding her request to HR that she be assigned a new manager. *Id.* at pg. 2-4. Her retraction of religious accommodations is not mentioned in this section.

Plaintiff argues that the rescission of her religious accommodation is timely because it was "an ongoing rescission" through the end of her employment. Plaintiff may seek relief for discrimination that grows out of or, is like, or reasonably related to the substance of the allegations in the administrative charge. *Kells v. Sinclair Buick–GMC Truck, Inc*., 210 F.3d 827,

836 (8th Cir. 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). However, the Eighth Circuit has explicitly stated that termination is a "discrete act," not a continuing violation. *See Hutson v. Wells Dairy, Inc.,* 578 F.3d 823, 826 (8th Cir. 2009) (*citing Nat'l R.R.,* 536 U.S. at 114) ("A termination is a discrete act, not a continuing violation."). Plaintiff did not file her EEOC charge within 300 days of October 2019, when she alleges Defendant withdrew her accommodation. Even if the Court considered the second and final warning issued to her by Defendant on November 15, 2019, in its time calculation, that date is still beyond the 300 days. Thus, the Court finds that Plaintiff failed to exhaust her administrative remedies as to this claim.

*Failure to State a Claim*

Even if Plaintiff had exhausted her administrative remedies, Count I still fails for failure to state a claim.

Title VII of the Civil Rights Act of 1964 forbids an employer "to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's ... religion[.]" 42 U.S.C. § 2000e–2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

When a plaintiff brings a Title VII religious discrimination claim based on failure to provide reasonable accommodations, the Eighth Circuit employs a three-part test set forth in *Jones v. TEK Indus., Inc.,* 319 F.3d 355, 359 (8th Cir. 2003). Plaintiff must show (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failing to comply with the conflicting requirement. *Id.* (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 65 (1986)). Though

Plaintiff need not plead all three prima facie elements to survive Defendant's Motion, "[t]he elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Warmington v. Bd. of Regents of Univ. Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citation and quotations omitted).

In Count I of the Amended Complaint, Plaintiff asserts that Defendant retracted her religious accommodation in October 2019 "for no reason despite its lack of inconvenience to them" and allowed her "to be treated differently and worse" under Komeshak's supervision on the basis of her religion. ECF No. 13 at ¶¶ 43, 62-63. Plaintiff further alleges that Defendant "was aware of Plaintiff's Orthodox Jewish faith from the start of her employment." *Id.* at ¶ 59. Plaintiff fails to allege that she was disciplined for failing to comply with a conflicting requirement. In her response, Plaintiff attempts to argue that she was wrongfully terminated because of Defendant's religious discrimination. Her termination is not mentioned in Count I. However, even if the Court were to infer her termination was because of Defendant's religious discrimination, Plaintiff fails to allege a "bona fide religious belief that conflicts with an employment requirement." Therefore, the Court finds Count I fails to state a claim upon which relief can be granted.

Harassment on the Basis of Religion (Count II)

Defendant argues that Plaintiff's Title VII harassment claim fails because the actions alleged by Plaintiff do not reach the level of conduct required to support a hostile work environment claim. Plaintiff counters by asserting that she suffered abuses at the hands of her supervisor over a ten-month period because of her religion, which culminated in her wrongful termination.

Title VII also prohibits an employer from subjecting its employees to a hostile work environment "because of such individual's race, color, religion, sex, or national origin." 42

U.S.C. § 2000e–2(a)(1). Hostile work environment harassment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). To establish a prima facie hostile work environment claim, the Plaintiff must show that (1) "[she] is a member of a protected class, (2) [she] was subjected to unwelcome harassment, (3) the harassment was based on [religion], (4) the harassment affected a term, condition or privilege of employment," and (5) that the employer knew or should have known about the harassment and failed to take proper remedial measures. *Al-Zubaidy v. TEK Indus., Inc.,* 406 F.3d 1030, 1038 (8th Cir. 2005); *see also, Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 933 (8th Cir. 2011). Furthermore, "[t]he underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Green v. Franklin Nat'l Bank of Minneapolis,* 459 F.3d 903, 910 (8th Cir. 2006) (internal quotation marks omitted). "Not all unpleasant conduct creates a hostile work environment.  Rather, the plaintiff must show that she was singled out because of her religion and that the conduct was severe and pervasive." *Williams v. City of Kan. City, Mo.,* 223 F.3d 749, 753 (8th Cir. 2000) (citation omitted).

Here, Plaintiff's Amended Complaint asserts that she is a member of the Orthodox Jewish Faith protected under Title VII, and her supervisor harassed her because of her religion by repeatedly berating her in front of her colleagues, barring her from attending a conference she had previously attended even after offering to cover the expenses and being unpaid during her time there, falsely accusing her of being described as condescending and unhelpful, withdrawing her religious accommodations, and filing two false written warnings against her. Plaintiff alleges the second warning, that lead to her termination, was made under false pretenses. Her supervisor

9

claimed Plaintiff had not been authorized by management to send an email as required, even though the manager in question is alleged to have stated Plaintiff had obtained proper approval and followed protocol. Plaintiff further alleges the harassment affected a privilege of her employment when her supervisor retracted her religious accommodations. Specifically, Plaintiff claims that in October 2019, around the Jewish High Holidays, her supervisor arbitrarily withdrew the religious accommodations that she had enjoyed since 2014. If Plaintiff wanted to continue practicing her religion, she would have to deplete her vacation time instead of using unpaid leave to celebrate significant Jewish holidays, and she would have to work longer hours Monday through Thursday to leave on time to be home by sundown on Fridays instead of getting to work from home. Plaintiff also claims that Defendant knew about this harassment and failed to take proper remedial measures by alleging that after seeking assistance from HR based on the several instances of harassment stated above, her supervisor found out and threatened her for doing so. Then two weeks later, Plaintiff was terminated for the second warning alleged to be made under false pretenses. The Court finds that the facts as alleged at this early stage are sufficient to state a cause of action for a hostile work environment based on Plaintiff's religion, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by Plaintiff, especially considering the revocation of her religious accommodations. Based on these allegations, taken as true, Plaintiff has sufficiently stated a claim for harassment on the basis of religion, and Defendant's Motion to Dismiss on Count II will be denied.

Retaliation (Count III)

Lastly, Defendant argues that Plaintiff did not administratively exhaust her Title VII retaliation claim, and even if she did, it fails to state claim. Plaintiff counters by asserting that she was wrongfully terminated shortly after she sought HR action against her supervisor and

10

discussed the matter with coworkers. Plaintiff contends these facts demonstrate that she was terminated for engaging in Title VII protected activity.

*Administrative Exhaustion*

The standard for administrative exhaustion is the same as discussed above under Count I. The Amended Complaint states that Plaintiff was terminated by Defendant on December 17, 2019, and that Plaintiff's EEOC complaint was filed on October 13, 2020, which is 301 days from the exact date of Plaintiff's termination to her filing. However, Title VII states that a charge shall be filed within 300 days *after* the alleged unlawful employment practice occurred. § 2000e-5(e)(1). "After" tells us that a litigant has 300 days *after* the unlawful practice happened to file a charge with the EEOC, meaning the clock begins the day *after* the practice occurred. Plaintiff's filing was exactly 300 days from the date after her termination and was timely filed.

Defendant also argues her claim was not exhausted because she asserted her retaliation claim under the National Labor Relations Act (NLRA), not Title VII, in her EEOC charge. However, the purpose of exhaustion is to provide the employer sufficient notice of Plaintiff's claim. *Russell v. TG Missouri Corp.*, 340 F.3d 735, 748 (8th Cir. 2003). Whether her EEOC charge of retaliation was made under the NLRA or Title VII is irrelevant. "The information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim, but it need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court." *Wallace v. DTG Operations, Inc.,* 442 F.3d 1112, 1123 (8th Cir. 2006), *abrogated on other grounds by Torgerson*, 643 F.3d at 1031. The purpose is to generally identify the claim to provide notice to Defendant, which Plaintiff has done here. Therefore, the Court finds that Plaintiff properly exhausted her administrative remedies as to Count III.

*Failure to State a Claim*

To prove a prima facie case of retaliation, Plaintiff must prove: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the two. *Shirrell v. St. Francis Med. Ctr.,* 793 F.3d 881, 888 (8th Cir. 2015). Under Title VII, protected activity may include "opposing an act of discrimination made unlawful by Title VII … or participating in an investigation under Title VII." *Hunt v. Neb. Pub. Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002). **"An individual making a complaint must have an objectively reasonable belief that an actionable Title VII violation has occurred for the complaint to qualify as a protected activity."** *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1064 (8th Cir. 2020). A "reasonable assessment is made 'in light of the applicable and substantive law.'" *Id.* at 1065. "To show a causal connection, Plaintiff must show that her protected activity was a but-for cause of her employer's adverse action." *Id.*

> Count III of Plaintiff's Amended Complaint alleges, *inter alia*, the following:
>
> Plaintiff exercised the proper protocol in seeking assistance from HR *in response to experiencing discrimination and harassment from Defendant*. Plaintiff was engaging in a protected activity in seeking input from her colleagues as part of completing the next steps that HR recommended to her. Defendant knew or should have known that retaliation against an employee engaging in a protected activity was a violation of federal law. Defendant threatened Plaintiff upon learning of her engagement in a protected activity, stating that her attempts at changing her reporting structure through HR's recommended process would fail and that she should be wary of appearing to create a hostile work environment in engaging in a protected activity. Two weeks later, Defendant terminated Plaintiff in retaliation for Plaintiff's engaging in a protected activity.

ECF No. 13, ¶¶ at 76-80 (emphasis added).

Plaintiff alleges that she spoke to HR about her alleged discrimination and harassment by her supervisor, and then spoke to her colleagues about her HR complaint and her options. Plaintiff's supervisor then threatened her after learning that she went to HR and accused her of creating a hostile work environment for discussing the HR options with her colleagues. Plaintiff further alleged that her supervisor suggested that "she better avoid the appearance of creating a

12

hostile work environment lest there be consequences." *Id.* at ¶ 49. Two weeks later, Plaintiff was subsequently terminated. Based on these allegations, taken as true, the Court can reasonably infer that she engaged in protected activity by going to HR and talking to her colleagues about Defendant's discrimination and harassment issues, and that activity was a but-for cause for her termination (Defendant's adverse action). Accordingly, the Court finds that Plaintiff has alleged sufficient facts to state a cause of action. The Court will deny Defendant's Motion on this ground.

**Conclusion**

For the reasons set forth above, Defendant's Motion will be granted in part and denied in part.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [ECF No. 16] is **GRANTED in part and DENIED in part**, and Count I is **DISMISSED.**

Dated this 28th day of March, 2024.


_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**