IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AVIVA BUCK-YAEL, | ) |
| | ) |
| Plaintiff, | )   Case No. 4:23-cv-00492-JAR |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

COMES NOW Washington University ("University"), by and through its attorneys, and pursuant to Fed. R. Civ. P. 56, asks this Court to grant it summary judgment.

**INTRODUCTION**

Plaintiff's two surviving claims in this lawsuit – a religious hostile work environment claim and retaliation claim under Title VII – fail as a matter of fact and law and the University is entitled to summary judgment.

With regard to her hostile work environment claim, the undisputed facts demonstrate that Plaintiff was not subjected to anything approaching severe or pervasive harassing conduct. Further, Plaintiff has no evidence that any University action was taken because of her religion. Plaintiff admits that the conduct she was subjected to was directed to all members of her team – i.e. she was not singled out in any way because of her religion. Plaintiff's complaint that her religious accommodations were "removed" cannot legally form the basis of her hostile work environment claim as this claim was previously dismissed and is factually barred by Plaintiff's admission that she was never denied any accommodation. The University is entitled to judgment on Plaintiff's hostile work environment claim.

Plaintiff's retaliation claim fails first, because she did not administratively exhaust this claim. Plaintiff did not allege in her Charge of Discrimination ("Charge") that she complained about any protected activity under Title VII. Second, Plaintiff's claim fails because there is absolutely no evidence that Plaintiff was terminated for anything other than legitimate, non-discriminatory reasons. Third, Plaintiff's claim fails because it is undisputed that Plaintiff's supervisor, Ms. Rachel Komeshak, was wholly unaware that Plaintiff engaged in any purported Title VII protected activity when she made the termination decision. The University is entitled to judgment on Plaintiff's retaliation claim.

## LEGAL ARGUMENT

### I.   LEGAL STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Danker v. City of Council Bluffs, Iowa*, 53 F.4th 420, 423 (8th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To survive a motion for summary judgment, plaintiffs must substantiate allegations with "sufficient probative evidence [that] would permit a finding in their favor on more than mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (cleaned up); *Sickels v. McDonough*, No. 4:21-CV-00963-JAR, 2024 WL 3844850, at *6 (E.D. Mo. Aug. 16, 2024) (requiring the non-movant to put forth "specific facts supported by sufficient probative evidence that would permit a finding in his favor on more than speculation.").

## II. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS.

Plaintiff's hostile work environment claim fails because there is no evidence she was subjected to an actionable hostile work environment, as a matter of law, and because Plaintiff has no evidence that any University action was taken because of her religion.

The standard to establish a hostile work environment under Title VII is among the highest standards in employment law. "The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment"[1] because the standard is "demanding."[2] To establish a *prima facie* hostile work environment claim, Plaintiff must prove "(1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *Collins v. Union Pac. R.R.*, 108 F.4th 1049, 1053 (8th Cir. 2024).

### A. Plaintiff was not subjected to severe or pervasive harassment.

As to the fourth element, courts require proof of "extreme" conduct that creates a poisoned work environment "permeated with discriminatory intimidation, ridicule, and insult"—conduct that is "so severe or pervasive" as to alter the terms and conditions of employment.[3] The Supreme Court has implored lower courts "to apply the demanding harassment standards to filter

---

[1] *Blomker v. Jewell*, 831 F.3d 1051, 1056-57 (8th Cir. 2016).
[2] *Alvarez v. Des Moines Bolt Supply*, 626 F.3d 410, 420 (8th Cir. 2010) ("The standards for a hostile environment are demanding, and conduct must be extreme.").
[3] *Duncan v. GM*, 300 F.3d 928, 934 (8th Cir. 2002) ("To clear the high threshold of actionable harm, [an employee] has to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult."); *Watson v. Heartland Health Labs.*, 790 F.3d 856, 861 (8th Cir. 2015) (conduct must be "so intimidating, offensive, or hostile that it poisoned the work environment"); *Meinen v. Bi-State Dev. Agency*, No. 4:22-CV-00620-JAR, 2023 WL 156857, at *4 (E.D. Mo. 2023) (noting that "standards for a hostile environment are demanding").

3

out complaints attacking the ordinary tribulations of the workplace."[4] A "few isolated incidents" are insufficient to meet this stringent standard, and the workplace instead must be "dominated" by a "steady barrage" of harassing conduct.[5] "[E]ven some conduct well beyond the bounds of respectful and appropriate behavior is nonetheless insufficient to be severe and pervasive."[6] The Eighth Circuit and judges in the Eastern District routinely reject claims involving much more severe and pervasive behavior than the actions presented here.[7]

For example, in *Clayton v. DeJoy*, this Court granted summary judgment on a hostile work environment claim involving similar allegations as those here. No. 4:18-CV-01039-JAR, 2020 WL 6822641, at *11 (E.D. Mo. Nov. 20, 2020). Clayton alleged that her "reasonable accommodation" was "moved," forcing her to work on "2-4 different machines per shift;" she was "kicked off" a machine in preference to a younger co-worker; and she was assigned to another unit where she had to bid on work. *Id*. This Court noted that Clayton did "not allege pervasive abusive, vulgar, or offensive behavior," "was never physically threatened or humiliated," her "supervisors did not use offensive language toward her," and there was "no

---

[4] *Al-Zubaidy v. TEK Indus.*, 406 F.3d 1030, 1038-39 (8th Cir. 2005).
[5] *Id.* at 1039; *Tisdell v. McDonough*, 2023 WL 2486083, at *2 (8th Cir. 2023); *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1086 (8th Cir. 2010).
[6] *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1083 (8th Cir. 2021); *see also Walker-Swinton v. Philander Smith Coll.*, 62 F.4th 435, 440 (8th Cir. 2023) ("vile or inappropriate behavior is not necessarily actionable") (citation omitted); *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 663 (8th Cir. 2021) (conduct that the court "condemn[s]" and for which employer should "be embarrassed and ashamed" may be insufficient to satisfy demanding hostile environment standard); *Meinen*, 2023 WL 156857, at *4 ("Even 'vile or inappropriate' behavior may be insufficient to rise to the level of a hostile work environment").
[7] *See e.g., Meinen*, 2023 WL 156857, at *1, 5 (dismissing harassment claim where plaintiff's allegations – including "several occasions" where coworker "intentionally [rubbed] her backside on Plaintiff" and made "sexually suggestive and humiliating comments" such as "you know you look good without clothes on" in front of others – failed to meet the "demanding" standard for hostile work environment).

4

indication that the behavior meaningfully interfered with her ability to perform the job." *Id*. Instead, this Court found that Clayton "alleged a variety of isolated instances resulting in minor inconveniences" and granted summary judgment because a "reasonable factfinder could not determine that such activities amounted to a hostile work environment." *Id*.

Similarly, here, Plaintiff admits she was never subjected to daily derogatory comments, physical intimidation, or insulting or harassing behavior approaching the conduct required to establish a hostile work environment claim. University's Statement of Uncontroverted Material Facts ("SUMF"), ¶ 64. Instead, Plaintiff maintains that she was subjected to a hostile work environment because her supervisor, Ms. Komeshak, occasionally cancelled one-on-ones with Plaintiff (and numerous other members of her team – the "REDCap team") because of workload and scheduling conflicts; Ms. Komeshak was critical of the entire REDCap team (not just Plaintiff); and the University did not sponsor Plaintiff – or any other members of the REDCap team – to attend a national conference based on budget reasons. First Amended Complaint ("P's Comp."), Doc. No. 13 ¶ 32-41. Plaintiff also falsely claims that Ms. Komeshak "withdrew" Plaintiff's religious accommodations to (1) work from home on Fridays and (2) take Jewish holidays as unpaid leave. *Id*. ¶ 42-43.

Like the "isolated instances resulting in minor inconveniences" from *Clayton*, Plaintiff's allegations do not come close to establishing the objectively severe and pervasive toxic work environment required to survive summary judgment. *Clayton*, 2020 WL 6822641, at *11. Cancelling one-on-ones, criticism of work performance, and declining to sponsor a work conference – which was conduct directed to the entire REDCap team – does not approach the "demanding" standard required to establish a workplace "dominated" by harassing conduct, even

5

when considered cumulatively. And Plaintiff's attempt to bolster her claim by pointing to the "revocation" of her accommodations is a non-starter, both legally and factually.

Legally, failure to accommodate is a standalone discrimination claim that is wholly different from a hostile work environment claim. *See Vetter v. Farmland Indus. Inc.*, 120 F.3d 749, 751 (8th Cir. 1997) (holding that a failure to accommodate claim requires an employee to prove: "(1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he has informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement").[8]

Here, the Court properly dismissed Plaintiff's failure to accommodate claim on March 28, 2024. Dismissal Order, Doc. No. 23, p. 5-8. Plaintiff cannot circumvent this ruling by attempting to recast the purported failure to accommodate as a hostile work environment claim.

Factually, Plaintiff's claim that the University "withdrew" her religious accommodations is false. Plaintiff unequivocally admitted at her deposition that the University never failed to accommodate any religious "observance or practice." 42 U.S.C. § 2000e(j); SUMF ¶¶ 77, 85.

With regard to the floating work-from-home-day, this was not an accommodation granted based on Plaintiff's religion. Plaintiff admits this was a privilege granted to all team members as "compensation" for having to work after hours or on weekends. SUMF ¶ 78-79. The work-from-home float day was revoked for all REDCap employees because Ms. Komeshak felt the team would be more efficient and collaborative if everyone was in person. SUMF ¶ 80-81. Plaintiff concedes that, after the float day was removed, Ms. Komeshak immediately granted Plaintiff's

---

[8] *See also Nat'l R.R. Passenger. v. Morgan*, 536 U.S. 101, 115 (2002) (holding that hostile work environment claims "are different in kind from discrete acts. Their very nature involves repeated conduct"); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998) ("Incidents of environmental harassment must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (cleaned up).

request to modify her schedule to leave early on Fridays to observe the Sabbath. SUMF ¶ 82-84. Plaintiff admits that she was never required by anyone at the University to work after sundown on Friday. SUMF ¶ 85. In other words, Plaintiff admits that the University never failed to accommodate her religious observance of the Sabbath.

Regarding her ability to use unpaid leave for religious holidays, Ms. Komeshak realized, after attending an HR training in October of 2019, that the University had been incorrectly processing Plaintiff's leave requests. SUMF ¶ 68-70. Specifically, HR told Ms. Komeshak in the training that University employees were required to exhaust paid leave prior to taking any unpaid leave as a reasonable accommodation. SUMF ¶ 70. This did not impact Plaintiff's ability to take leave for any Jewish holiday – it simply changed how Plaintiff's leave requests were processed. SUMF ¶ 71-76. Plaintiff admits that every request for leave to observe a religious holiday was granted through her termination. SUMF ¶¶ 74, 77. Plaintiff expressly admits that at no point was she denied any request to take leave for a religious holiday. SUMF ¶ 77.

Plaintiff's argument essentially boils down to her disagreement with the University's revocation of the floating work-from-home-day (which was not a religious accommodation) and the University's requirement that she exhaust paid leave before requesting unpaid leave as an accommodation. But the law is clear that an accommodation only has to be reasonable – ***it does not have to be the employee's preferred accommodation***. *See Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 546 (8th Cir. 2018) (noting that "an employer has only to provide an accommodation that is reasonable, not an accommodation the employee prefers.").[9] Plaintiff admits that she was provided ***reasonable*** accommodations and further admits that the University

---

[9] *See also Davis v. McDonough*, No. 23-3419, 2025 WL 212065, at *2 (8th Cir. Jan. 16, 2025) ("Providing an accommodation that is reasonable, on the other hand, is exactly what the ADA requires, even if the employee would have preferred a different option.") (cleaned up).

7

never interfered with her ability to observe her religious practice. SUMF ¶¶ 77, 85. These admissions foreclose any claim that Plaintiff's religious accommodations were "rescinded," even if such an assertion could form the basis of a hostile work environment claim (and it cannot).

The undisputed evidence establishes that Plaintiff was not subjected to an actionable hostile work environment and the University is entitled to judgment.

### B. None of the University's actions were motivated by Plaintiff's religion.

Even if Plaintiff could meet the "demanding" standard to establish conduct rising to the level of a hostile work environment – and she cannot – Plaintiff's claim still fails because the undisputed evidence establishes that no University action or decision was taken because of Plaintiff's religion. With regard to cancelling one-on-ones, the evidence demonstrates that Ms. Komeshak regularly cancelled these meetings with all of her direct reports, not just Plaintiff, due to her workload and busy schedule. SUMF ¶ 20. Plaintiff admits that Ms. Komeshak's purported "criticisms" regarding work performance were directed to the entire REDCap team, not just Plaintiff. SUMF ¶ 18. Plaintiff acknowledges that the University decided not to send any employees from the REDCap team to the REDCap conference in 2019, for financial reasons. SUMF ¶¶ 25, 29. And Plaintiff further admits that she was permitted to attend the REDCap conference. SUMF ¶ 28. Critically, Plaintiff concedes that her religion was not mentioned at all during the conversations regarding these University actions – which again, were directed toward the entire REDCap team, not just Plaintiff. SUMF ¶¶ 19, 30.

Plaintiff's failure to connect the purportedly harassing behavior to her religion is fatal to her hostile work environment claim. *See Clayton*, 2020 WL 6822641, at *11 (granting summary judgment because the plaintiff failed to identify any "causal connection to the allegedly hostile work environment" beyond "her own conclusory allegations of harassment" and "references [to]

8

her membership in a protected class").[10] Here, Plaintiff cannot point to evidence that any University action she complains about was taken because of her religion.

In sum, Plaintiff cannot establish that the conduct she complains of rises to the level of an actionable hostile work environment claim; she cannot establish that any University action was motivated by or even related to her religion; and she cannot assert any failure to accommodate to save her hostile work environment claim, because there was no failure to accommodate and because this claim has been dismissed. The University is entitled to summary judgment on Plaintiff's hostile work environment claim.

### III.   THE UNIVERSITY DID NOT RETALIATE AGAINST PLAINTIFF.

Plaintiff's retaliation claim fails because she did not administratively exhaust this claim and, in any event, her retaliation claim is entirely without merit.

#### A. Plaintiff failed to administratively exhaust a Title VII retaliation claim.

Plaintiff did not administratively exhaust a retaliation claim, as required to file suit. "To exhaust administrative remedies an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *See Allen v. Missouri*, No. 4:11-CV-2224-JAR, 2013 WL 2156259, at *4 (E.D. Mo.

---

[10] *Marin v. TVS Supply Chain Solutions*, 4:24-CV-00901-JAR, 2024 WL 4826792, at *7 (E.D. Mo. Nov. 19, 2024) (dismissing claim for failure to allege causal nexus between religion and the allegedly harassing behavior); *Clobes v. 3M Co.*, 106 F.4th 803, 807-808 (8th Cir. 2024) (holding claim fails due to plaintiff's failure to establish causal nexus between religion and hostile work environment); *Trapp v. Wilkie*, No. 3:18-CV-05063, 2019 WL 9656444, at *6 (W.D. Mo. Nov. 20, 2019), *affirmed sub nom*, 835 F. App'x 902 (8th Cir. 2021) (quoting *Rickard v. Swedish Match N.A.*, 773 F.3d 181, 185 (8th Cir. 2014)) ("A supervisor can be 'manifestly inappropriate and obnoxious' . . . but this behavior alone is insufficient to show hostility [based on gender]."); *Smith*, 625 F.3d at 1084 (noting that a hostile work environment claim fails when the employee fails to present any evidence "of a nexus between the alleged harassment and her protected status").

2013) (citing 42 U.S.C. § 2000e-5).[11] For a retaliation claim, a charging party must allege that she engaged in Title VII protected activity. *See Davis v. UPS*, No. 4:23-CV-272, 2024 WL 2152459, at *4-5 (E.D. Mo. May 14, 2024) (noting that a retaliation claim requires an allegation in the Charge that the employee "engaged in statutorily protected conduct" under Title VII). "Protected activity under Title VII includes (1) opposition to employment practices prohibited under Title VII, and (2) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII." *Brown v. Preferred Fam. Healthcare*, No. 1:24-CV-180, 2025 WL 636961, at *4 (E.D. Mo. Feb. 27, 2025).

In her Charge, Plaintiff claims that she was terminated for "discussions with coworkers" which she claims constitutes "protected concerted activity" under the National Labor Relations Act (NLRA). SUMF ⁋ 87-88. Plaintiff concedes in her Charge that her retaliation claim is based on the University's purported "violation of the . . . NLRA . . . ." SUMF ⁋ 89. A complaint of purported concerted activity **under the NLRA** is not a complaint of protected activity **under Title VII**. *Clyburn v. LGC Assocs.*, 2010 WL 2518467, at *4 (E.D. Mo. 2010) (granting motion to dismiss Title VII retaliation claim based on activity protected under the NLRA).[12]

To avoid judgment on her Title VII retaliation claim, Plaintiff now states that, when she met with HR on November 27, 2019, she complained about the University's "removal" of her

---

[11] *Tang v. Eaton Corp.*, No. 4:22-CV-1116, 2023 WL 3477946, at *2 (E.D. Mo. 2023) ("Exhaustion of administrative remedies is a condition precedent to the filing of an action under Title VII."); *Cooper v. City of St. Louis*, No. 4:16-CV-1521, 2018 WL 3093504, at *4 (E.D. Mo. 2018) (stating the Eighth Circuit's view of exhaustion as "central to Title VII's statutory scheme" and further noting the "resolute" requirement that, because retaliation claims are "not reasonably related to underlying discrimination claims," they must be separately alleged in a Charge).

[12] *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1136 (8th Cir. 2007) (complaint about violation of other laws "is not a protected activity within the scope of Title VII retaliation provisions"); *Swatzell v. Se. Missouri State Univ.*, No. 1:16-CV-00262 JAR, 2017 WL 3116150, at *4 (E.D. Mo. 2017) (dismissing Title VII retaliation claim based on activity protected by other statutes).

alleged religious accommodations. P's Compl. ⁋ 76. But Plaintiff did not make any allegation regarding this purported complaint about her religious accommodations in her Charge. In fact, nowhere in Plaintiff's Charge does she claim she engaged in Title VII protected activity—she does not claim she opposed a Title VII-protected employment practice or that she participated in any Title VII proceeding. SUMF ⁋ 90. Because she failed to include such an allegation in her Charge, Plaintiff's retaliation claim is not exhausted and the University is entitled to judgment.

### B. Plaintiff's termination was not motivated by any Title VII protected activity.

To establish a *prima facie* case of retaliation, Plaintiff must prove that (a) she engaged in statutorily protected activity; (b) an adverse employment action was taken against her; and (c) a causal connection exists between the two events. *Clayton*, 2020 WL 6822641, at *12. Plaintiff "must demonstrate that her protected activity was a but-for cause of the adverse employment action." *Id*. Here, Plaintiff cannot possibly meet her stringent burden of proving "but for" causation[13] – i.e., that, but for her complaint, she would not have been terminated – a legal standard described as the Supreme Court's "instruct[ion to] lower courts to stop letting contrived retaliation claims hijack or delay legitimate employer performance decisions."[14] "It is not sufficient to establish only that [protected activity] was a substantial or motivating factor in the employer's decision, for it must be shown to have been ***dispositive***."[15] This standard is not met if the decision was motivated "at least in part" by a non-retaliatory reason.[16]

---

[13] *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Hustvet v. Allina Health Sys*., 910 F.3d 399, 412 (8th Cir. 2018).
[14] *Jackson v. Gen. Motors*, 2020 WL 3469334, at *32 (E.D. Mo. 2020).
[15] *Harrell v. Robinson*, 703 Fed. App'x 440, 444 (8th Cir. 2017) (emphasis added) (cleaned up); *see also Canning v. Creighton Univ*., 995 F.3d 603, 612 (8th Cir. 2021) (protected classification "must have been the factor that made a difference").
[16] *Walker v. Missouri DOC*, 2022 WL 2007393, at *8 (W.D. Mo. 2022), *aff'd*, 2023 WL 2822131 (8th Cir. 2023).

11

Plaintiff's retaliation claim fails because Ms. Komeshak, the person who made the decision to terminate Plaintiff, was wholly unaware of any Title VII protected activity when she made the termination decision. It is undisputed that, although Ms. Komeshak knew Plaintiff went to HR to dispute the final written warning in November of 2019, she was never notified – by HR or by Plaintiff – of the substance of Plaintiff's conversations with HR prior to Plaintiff's termination. SUMF ¶ 46-48. On this basis alone, Plaintiff's retaliation claim fails.

It is black letter law that a retaliation claim cannot survive if the decision-makers were unaware of any protected activity because "the causation element of a *prima facie* [retaliation] case requires proof that [the] decision maker was aware of plaintiff's protected activity at the time of [the] adverse employment action." *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898-99 (8th Cir. 2011) (no retaliation claim when decision-makers "were totally unaware that Porter had ever expressed any concerns about discrimination when they voted in favor of termination"); *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (affirming summary judgment on retaliation claim when decisionmaker had "no knowledge of the protected activity"). The decision-maker's knowledge of the alleged protected activity "is 'absolutely necessary' to prove causation," because "by definition" an individual cannot take action because of a factor of which he or she is unaware. *Valdepena v. Research Psych. Ctr.*, 2012 WL 4829420, at *5 (W.D. Mo. 2012) (citations omitted); *see also Williams v. United Parcel Serv.*, 963 F.3d 803, 808 (8th Cir. 2020) ("A causal link does not exist if decision makers were unaware of the protected activity.") (cleaned up). This inescapable logic has been applied repeatedly by courts in the Eighth Circuit when rejecting retaliation claims and is fatal to Plaintiff's retaliation claim here. *See, e.g., Mayes v. Reuter*, No. 4:17-CV-2905, 2018 WL 2267905, at *8 (E.D. Mo.

May 17, 2018) (dismissing retaliation claim for failure to state claim in the absence of "allegations that [the decision-maker] was aware" of plaintiff's alleged protected activity).

Even if Plaintiff could establish that the decision-maker knew about her purported protected activity (and she cannot), Plaintiff's retaliation claim still fails because she cannot point to any evidence that her termination was motivated by anything other than legitimate, non-discriminatory performance issues. Plaintiff seems to imply that the temporal proximity between her meeting with HR on November 27, 2019 and her termination on December 17, 2019 is enough to establish causation. In other words, Plaintiff relies on the "logical fallacy" that sequence proves causation, which courts have consistently held "is not enough to support a finding of retaliation."[17] This argument fails for numerous reasons.

First, the Eighth Circuit has been crystal clear that temporal proximity alone is insufficient to support causation for a retaliation claim. "The mere coincidence of timing ***does not*** raise an inference of causation." *Scroggins v. Univ. of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000) (emphasis added). "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999).

Second, even if timing alone could establish causation, a one-month gap between a complaint and an employer's action (and indeed, even shorter time gaps) has been deemed

---

[17] *See Turner v. Mull*, 784 F.3d 485, 493 (8th Cir. 2015) ("*Post hoc ergo propter hoc* ['after this, therefore because of this'] is not enough to support a finding of retaliation"); *Couch v. American Bottling*, 955 F.3d 1106, 1109 (8th Cir. 2020) ("timing alone is not enough" to prove retaliation); *Dees v. Iron Mountain*, 2022 WL 4598539, at *10 (E.D. Mo. 2022) ("*Post hoc ergo propter hoc* is not enough to support a finding of retaliation"); *see also Travis v. Perdue*, 2021 WL 328916, at *6 (W.D. Mo. 2021) ("Plaintiff's subjective belief that the events are connected is insufficient to plead the causal connection necessary to state a claim.").

13

insufficient to establish causation. *See EEOC v. CRST Van Expedited,* 679 F.3d 657, 694 (8th Cir. 2012) (holding that one-month gap is no more than "mere speculation" regarding causation).[18]

Third, courts have repeatedly held that employees on notice of an employer's concerns, like Plaintiff, cannot insulate themselves from subsequent discipline under threat of a retaliation claim by asserting an allegation of discrimination. Courts routinely hold that such conduct constitutes "an abuse of the anti-retaliation remedy."[19] "[T]he anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." *Parker v. USDA*, 129 F.4th 1104, 1114 (8th Cir. 2025).[20]

Plaintiff's ongoing performance issues were well documented long before her meeting with HR. As early as September of 2019, a full two months before Plaintiff's November 27th meeting with HR, Ms. Komeshak emailed HR indicating that she wanted to move forward with termination based on these performance concerns. SUMF ¶ 49-50. Plaintiff thereafter continued

---

[18] *Smith*, 625 F.3d at 1088 (one-month gap was "tenuous at best"); *Wisbey v. City of Lincoln*, 612 F.3d 667, 676 (8th Cir. 2010) (same); *Nelson v. J.C. Penney*, 75 F.3d 343, 346-47 (8th Cir. 1996) (one-month gap "slender reed of evidence" that supports "nothing but rank speculation"); *Carrington v. Des Moines*, 481 F.3d 1046, 1050, 1052 (8th Cir. 2007) (3-week gap would require "a quantum leap" to infer causation); *Corkrean v. Drake Univ.*, 55 F.4th 623, 632 (8th Cir. 2022) (1-2 week gap was "tenuous temporal connection"); *Blackwell v. Alliant Techsystems*, 822 F.3d 431, 436 (8th Cir. 2016) (termination *same day* as complaint was "mere coincidence in timing").
[19] *See Carrington*, 481 F.3d at 1051 ("Indeed, complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy."); *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004) ("complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy").
[20] "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of temporal proximity." *Hervey v. Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, the inference of retaliation does not arise."); *Kiel,* 169 F.3d at 1136 (an employee's "intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination"); *Lovelace v. Washington Univ.*, 931 F.3d 698, 707 (8th Cir. 2019) (holding that intervening misconduct between the protected activity and termination "ended any connection there might have been").

to interrogate her coworkers, making them uncomfortable, despite further written and verbal admonishments. SUMF ¶¶ 51-54, 57-58. After her November 27, 2019 meeting with HR, notwithstanding this repeated discipline, Plaintiff cornered a new employee on December 16, 2019, and attempted to pressure him into sending her messages between him and his supervisor. SUMF ¶ 57. This new employee felt very uncomfortable and reported Plaintiff's conduct to Ms. Komeshak, who made the decision in conjunction with HR and I2 leadership to move forward with termination. SUMF ¶ 58-60. Plaintiff's performance issues pre-dated her November 2019 meeting with HR *and* she engaged in subsequent misconduct clearly justifying her termination. Plaintiff's complaint to HR does not immunize her from the consequences of her misconduct,[21] and her "contrived retaliation claim" is a prime example of an employee impermissibly "hijack[ing] … legitimate employer performance decisions," which courts forbid.[22]

Because Plaintiff's retaliation claim was not administratively exhausted, the decision-maker was unaware of Plaintiff's alleged protected activity, and Plaintiff was terminated for ongoing, legitimate, non-discriminatory misconduct that both pre and post-dated her meeting with HR, Plaintiff's retaliation claim fails and the University is entitled to judgment.

## **CONCLUSION**

The undisputed facts demonstrate that Plaintiff's claims are factually and legally deficient. The University respectfully requests that this Court provide the relief the University is entitled to under the law: summary judgment on all claims in Plaintiff's First Amended Petition, and such other and further relief as this Court deems appropriate under the circumstances.

---

[21] *See Couch*, 955 F.3d at 1109 (discrimination complaint "does not clothe the complainant with immunity"); *Gibson v. Geithner*, 776 F.3d 536, 542 (8th Cir. 2015) (underperforming employees "may not insulate themselves from discipline by announcing an intention to claim discrimination just before the employer takes action").
[22] *Jackson*, 2020 WL 3469334, at *32.

RESPECTFULLY SUBMITTED,

**TUETH KEENEY COOPER MOHAN & JACKSTADT, P.C.**

By: */s/ Mollie G. Mohan*
Mollie G. Mohan, #64754MO
Sarah P. McConnell, #74216MO
34 N. Meramec Avenue, Suite 600
St. Louis, MO 63105
Tel: (314) 880-3600
Fax: (314) 880-3601
mmohan@tuethkeeney.com
smcconnell@tuethkeeney.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on this 10th day of April 2025, the foregoing was served via email upon all counsel of record.

*/s/ Mollie G. Mohan*