IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AVIVA BUCK-YAEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00492-JAR |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Aviva Buck-Yael ("Plaintiff" or "Ms. Buck-Yael"), by and through her undersigned counsel, hereby submits this Memorandum in opposition to Defendant Washington University's ("Defendant" or "WashU") Motion for Summary Judgment. ("MSJ"). Plaintiff respectfully requests that this Court deny Defendant's MSJ for the reasons set forth below.

## I.    FACTUAL BACKGROUND[1]

Ms. Buck-Yael was a dedicated WashU employee, who worked exceptionally well with customers, and often served as a resource for other team members. (Plaintiff's Statement of Additional Facts ("SOAF") ¶ 29). Ms. Buck-Yael is an Orthodox Jew who was observant throughout her employment at WashU. (Plaintiff's Responses to Defendant's Statement of Facts ("PRSOF") ¶¶ 65-66); (SOAF ¶ 17). WashU accommodated Ms. Buck-Yael's religious observance for the first nearly five years of her employment. (PRSOF ¶ 67). Unfortunately, in 2019, Rachel Komeshak ("Ms. Komeshak") became Ms. Buck-Yael's new supervisor and set about harassing and belittling Buck-Yael. (PRSOF ¶¶ 18-19, 40-41, 46-48, 55-57, 60, 64, 67, 70,

---

[1] Plaintiff has filed herewith her Response to Defendant's Statement of Facts and Statement of Additional Facts, which represents a more detailed factual background.

72, 75-77, 82; SOAF ¶¶ 26, 30-40, 42-58).  Significantly, Ms. Komeshak's mistreatment of Ms. Buck-Yael included persistently seeking to make her working life unbearable by retracting the religious accommodations Ms. Buck-Yael had been granted without issue for nearly five years. (PRSOF ¶¶ 41, 64, 65-77, 81-82  SOAF ¶¶ 36, 41-52). These included working from home on the Sabbath and using unpaid leave to take off on religious holidays, which allowed her to observe her religion without foregoing her vacation benefits for family and other non-religious time off. *Id.* This harassment was easy for Ms. Komeshak to pursue, given that WashU had *no* policy governing religious accommodations, or related leave. (PRSOF ¶ 70; SOAF ¶¶ 5-12). Ms. Komeshak manufactured performance issues altogether based on minor mistakes not considered discipline-worthy for employees other than Ms. Buck-Yael to set up Ms. Buck-Yael's termination. (PRSOF ¶ 35; SOAF ¶¶ 41, 44-47).

Shortly after Ms. Buck-Yael complained about the removal of her religious accommodations to Ms. Komeshak on October 23, 2019, November 4, 2019, and November 20, 2019, and to human resources[2] on November 27, 2019, Ms. Komeshak reprimanded her for purportedly creating a "toxic work environment." (PRSOF ¶¶ 40-41, 43, 46-47, 64, 72 SOAF ¶ 39-40, 49-51, 53) Furthermore, when Ms. Buck-Yael raised concerns about Ms. Komeshak's management to her coworkers on December 16, 2019, Ms. Komeshak fired her the next day. (PRSOF ¶ 59; SOAF 54-58). Ms. Buck-Yael's termination notice stated that her firing directly resulted from her complaints about management. (SOAF ¶ 55-56).

It is hard to fathom a more clear-cut case of hostile work environment and retaliation than established by the instant record. For these reasons, and for the reasons further expanded upon

---

[2] WashU human resources did nothing to address Ms. Buck-Yael's concerns, and in fact explicitly affirmed that the "real issue" leading to Ms. Buck-Yael's termination was her complaining about Ms. Komeshak to coworkers. (CITE).

herein and in Ms. Buck-Yael's Response to Defendant's Statement of Facts and Statement of Additional Material Facts, this Court should deny Defendant's MSJ in its entirety.

## II.    THE SUMMARY JUDGMENT STANDARD

Courts have "repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy." *EEOC v. Steak N Shake Operations, Inc*., No. 4:04cv880 SNL, 2006 WL 6667386 at *1 (E.D. Mo. Apr. 4, 2006) (quoting *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment is only proper where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jackson v. United Parcel Service, Inc.,* 643 F.3d 1081, 1085 (8th Cir. 2011). The moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op*., Inc., 838 F.2d 268, 273 (8th Cir. 1988). The facts must be viewed in the light most favorable to the nonmoving party when there is a genuine dispute as to those facts. *Jackson,* 643 F.3d at 1085. When the facts are in dispute such that they could "reasonably be resolved in favor of either party," summary judgment is improper. *Universal Assurors Life Ins. Co. v. Holtsclaw*, 994 F.2d 467, 470 (8th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 250 (1986)).

Although not immune from summary judgment, employment cases, including the instant matter, are "often fact intensive and dependent on nuance in the workplace." *Cruse v. Bi-State Dev. Agency of the Mo.-Illinois Metro. Dist.*, No. 4:20-cv-366-MTS, 2022 WL 1185149 at *6 (E.D. Mo. Apr. 21, 2022) (denying summary judgment where the facts amounted to "a 'he-said-she-said' type situation.") (internal citations omitted).

Moreover, the court must "disregard all evidence favorable to the nonmoving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products. Inc*., 530 U.S. 133, 151 (2000). At the summary judgment stage, the court's purpose is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir 2011) (internal citations omitted).  This is because credibility determinations and weighing evidence "are jury functions, not those of a judge." *Jackson*, 643 F.3d at 1085. Thus, summary judgment is inappropriate where the record creates a question of fact that a jury could reasonably draw an inference from in one direction or the other. *Moore v. Indehar*, 514 F.3d 756, 762-62 (8th Cir. 2008). Here, as detailed further *infra,* the evidence demonstrates that Ms. Buck-Yael's manager harassed her based on her religion by needlessly and doggedly targeting her long-standing religious accommodation and bullying Ms. Buck-Yael, and retaliated by firing her for complaining about the harassment.

## III.   LEGAL ARGUMENT

### A. Defendant's MSJ Must be Denied as to Plaintiff's Hostile Work Environment Claim.

Plaintiff respectfully urges this Court to deny Defendant's MSJ as to Ms. Buck-Yael's hostile work environment claim because she has established or created issues of material fact demonstrating that her manager, Ms. Komeshak persistently targeted her for her religious beliefs. Ms. Komeshak also disciplined and ultimately discharged Ms. Buck-Yael for complaining to human resources and coworkers about Ms. Komeshak's harassment and the removal of her religious accommodations. Thus, Ms. Buck-Yael's hostile work environment claim must survive.

Title VII prohibits an employer from subjecting an employee to a hostile work environment "because of such individual's race, color, *religion*, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). To establish a hostile work environment claim,

4

Plaintiff "must show that: (1) the charging party belongs to a protected group; (2) the charging party was subject to unwelcome harassment; (3) that harassment was based upon the protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *EEOC v. GMC*, 11 F. Supp. 2d 1077, 1080 (E.D. Mo. 1998). A hostile work environment is created by evidence of conduct that creates a workplace permeated with "discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1986). To determine if the harassment was both subjectively and objectively hostile, a court must consider all of the circumstances, which include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . .[N]o single factor is required." *Id.* at 23.

Here, Plaintiff's manager, Ms. Komeshak, persistently targeted Plaintiff for her religious beliefs, taking extraordinary steps to diminish her religious accommodations after being told by more than one manager that Ms. Buck-Yael had been using such accommodations without issue for years. (PRSOF ¶¶ 41, 64, 65-77, 81-82  SOAF ¶¶ 36, 41-52). Ms. Komeshak engaged in gossip and profanity regarding Ms. Buck-Yael to other WashU employees throughout 2019, including to managers. (SOAF ¶ 31). Furthermore, members of Ms. Buck-Yael's team observed Ms. Komeshak treating her less favorably than other team members. (SOAF ¶ 32).

Despite the fact that WashU had no policy on religious accommodations or religious holiday leave, Ms. Komeshak easily manufactured a reason to treat Ms. Buck-Yael's leave less favorably than non-Orthodox Jewish employees, forcing her to deplete her vacation bank in order to observe her religion. (PRSOF ¶¶ 70, 76; SOAF ¶ 33).

5

Ms. Komeshak did not stop there. In addition to manufacturing a non-existent leave policy to target Ms. Buck-Yael's religious holiday accommodation, Ms. Komeshak burdened Ms. Buck-Yael's observance of the Sabbath. Specifically, Ms. Komeshak regularly granted employees' work from home requests, including those submitted by Ms. Buck-Yael, when they related to issues *outside* of a religious context. (PRSOF ¶ 81; SOAF ¶ 37). However, despite Ms. Buck-Yael having worked from home on Fridays for *years* without issue under previous managers so that she could be home to observe the Sabbath at sundown, Ms. Komeshak targeted this accommodation. (PRSOF ¶¶ 66, 82; SOAF ¶¶ 37-38, 40, 43). As such, if "Plaintiff wanted to continue practicing her religion[,] . . . she would have to work longer hours Monday through Thursday to leave on time to be home by sundown on Fridays instead of getting to work from home." (*See*, this Court's Order on Def.'s Mot. to Dis. Plf.'s First Amended Complaint ("MTD Order") at Dkt. 23, pp. 9-10); *Id.* Ms. Komeshak took this step even after Ms. Buck-Yael informed her that she has had to abandon her car on the side of the road when trying to reach home in time for sundown. (PRSOF ¶ 55).  Plaintiff reported Ms. Komeshak's ridicule, unfair disciplinary targeting, and most importantly, baseless downward modification of Plaintiff's religious accommodations to WashU's human resources, which did nothing to mitigate the harassment. (SOAF ¶¶ 50-52, 55-56). Ms. Komeshak's harassment ended only with her termination of Ms. Buck-Yael's employment (SOAF ¶¶ 55-56).

When Defendant filed its Motion to Dismiss, it argued that she failed to state a hostile work environment claim because the actions Ms. Buck-Yael alleged did not reach the "level of conduct required to support" such a claim. (Dkt. 17, pp.  2). However, in denying Defendant's motion as to Ms. Buck-Yael's hostile work environment claim, this Court reasoned that:

> Plaintiff's Amended Complaint asserts that she is a member of the Orthodox Jewish Faith protected under Title VII, and her supervisor

harassed her because of her religion by repeatedly berating her in front of her colleagues, barring her from attending a conference she had previously attended even after offering to cover the expenses and being unpaid during her time there, falsely accusing her of being described as condescending and unhelpful, withdrawing her religious accommodations, and filing two false written warnings against her. Plaintiff alleges the second warning, that lead to her termination, was made under false pretenses. Her supervisor claimed Plaintiff had not been authorized by management to send an email as required, even though the manager in question is alleged to have stated Plaintiff had obtained proper approval and followed protocol. Plaintiff further alleges the harassment affected a privilege of her employment when her supervisor retracted her religious accommodations. Specifically, Plaintiff claims that in October 2019, around the Jewish High Holidays, her supervisor arbitrarily withdrew the religious accommodations that she had enjoyed since 2014. If Plaintiff wanted to continue practicing her religion, she would have to deplete her vacation time instead of using unpaid leave to celebrate significant Jewish holidays, and she would have to work longer hours Monday through Thursday to leave on time to be home by sundown on Fridays instead of getting to work from home. Plaintiff also claims that Defendant knew about this harassment and failed to take proper remedial measures by alleging that after seeking assistance from HR based on the several instances of harassment stated above, her supervisor found out and threatened her for doing so. Then two weeks later, Plaintiff was terminated for the second warning alleged to be made under false pretenses. The Court finds that the facts as alleged at this early stage are sufficient to state a cause of action for a hostile work environment based on Plaintiff's religion, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by Plaintiff, *especially considering the revocation of her religious accommodations.*

*Id*. at pp. 9-10 (emphasis added).

Here, as detailed *supra,* Plaintiff has produced and elicited evidence supporting nearly every allegation in her Complaint that the Court identified as supporting her hostile work environment claim if proven. Most significantly, Plaintiff established that Ms. Komeshak diminished the religious accommodations that were granted to Ms. Buck-Yael since 2014 by requiring her to deplete her vacation bank in order to celebrate Jewish holidays and requiring her to work longer hours Monday through Thursday in order to leave on time to be home by sundown on the Sabbath. (PRSOF ¶¶ 41, 64, 65-77, 81-82;  SOAF ¶¶ 36, 41-52).

Now, in its MSJ, Defendant submits that "[c]ancelling one-on-ones, criticism of work performance, and declining to sponsor a work conference . . . does not approach the 'demanding' standard required to establish a workplace 'dominated' by harassing conduct, even when considered cumulatively." (Dkt. 54 at pp. 5-6). However, this analysis conveniently omits and ignores the litany of other, more serious harassing events that a reasonable jury could conclude occurred when viewing the record in a light most favorable to Ms. Buck-Yael. *Allen v. U.S. Secretary of Defense,* Case No, 4:10CV1928, 2012 WL 401062, at *2 (E.D. Mo. Feb. 8, 2012) (When considering a motion for summary judgment, "the court must view all facts and inferences in the light most favorable to the non-moving party[.]") (internal citations omitted).

While perhaps, any one of the incidents of harassing and bullying Defendant undertook on its own may not support a hostile work environment claim, Ms. Komeshak's interconnected "accumulation of abusive conduct" that went unaddressed by Defendant when Ms. Buck-Yael complained to human resources, support her hostile work environment claim. *EEOC v. GMC*, 11 F. Supp. 2d 1077, 1080 (E.D. Mo. 1998). This is particularly true in light of Ms. Komeshak's simultaneous, persistent interference with Ms. Buck-Yael's long-standing religious accommodations. *See* Dkt. 23 at p. 10; (PRSOF ¶¶ 41, 64, 65-77, 81-82; SOAF ¶¶ 36, 41-52).

Furthermore, Defendant's assertion that at least some of Ms. Buck-Yael's manager's bullying and harassing behavior may have been motivated by non-religious factors does not imperil Plaintiff's hostile work environment claim. "[N]ot every aspect of hostile work environment need be explicitly [based on the protected class] to be probative." *EEOC v. GMC*, 11 F. Supp. 2d 1077, 1081 (E.D. Mo. 1998) (citing *Hathaway v. Runyon*, 132 F.3d 1214, 1997 WL 790218, at *8 (8th Cir. 1997)); *See also, Quick v. Donaldson Co*., 90 F.3d 1372 (8th Cir. 1996) ("The district court . . . incorrectly concluded that the alleged harassment was not [based

on a protected category] because it found the underlying motive was personal enmity or hooliganism. A hostile work environment is not so easily excused, however . . . . The fact that [the plaintiff] might have been unpopular could not justify conduct that otherwise violated Title VII.") (internal citations omitted). *See also, Burns v. McGregor Elec. Indus*., 989 F.2d 959, 675 (8th Cir. 1993) ("[T]here is no excuse in any work environment" for subjecting a worker to such abuse "even if the harassers and plaintiff did not like each other"). In the instant matter, when Ms. Buck-Yael's previous supervisor, Dr. Albert Lai, stated to Ms. Komeshak in part, "I had previously allowed her to take unpaid leave, but if she never cleared taking leave with you, then do what you think is best," Ms. Komeshak responded in part, "I should probably just approve it . . . but this is part of the game-playing that I encounter on a daily basis." (PRSOF ¶¶ 41, 64; SOAF ¶¶ 36). Ms. Komeshak's dislike of Ms. Buck-Yael is no excuse for targeting her longstanding religious accommodation.

Moreover, while Defendant goes to great lengths in its MSJ to emphasize that an employee is not entitled to her "preferred accommodation,"  Plaintiff does not argue otherwise. *See, e.g.* Dkt. 54, pp. 7-8. There is no failure to accommodate claim at issue in the instant motion. Consistent with this Court's MTD Order, Plaintiff has, at the very least, sufficiently established issues of material fact supporting the majority of her allegations underlying her hostile work environment claim. To support such a claim, Plaintiff must provide evidence that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). For the reasons set forth *supra*, Plaintiff has made such a showing and her claim should be submitted to the jury.

9

Finally, Defendant's lengthy reliance on *Clayton v. Dejoy,* 4:18-cv-01039-JAR, 2020 WL 6822641 (E.D. Mo. Nov. 20, 2020) is misplaced. The plaintiff in *Clayton* presented no "evidence suggesting that the supposedly hostile work environment was based on her membership in a protected class." *Id.* at 26. Moreover, the *Clayton* plaintiff's hostile work environment allegations boiled down to one discrete issue related to the machine to which she was assigned to work. *Id.* at 25. Unlike Ms. Buck-Yael, there is no indication that the *Clayton* plaintiff suffered a material reduction in employment benefit or loss of employment. *See, generally, Clayton,* 2020 WL 6822641. In short, *Clayton* is not instructive as to the instant matter.

Because the evidence supports nearly all of Plaintiff's hostile work environment allegations, this Court must deny Defendant's Motion for Summary Judgment as to that claim.

### B.  This Court Should Deny Summary Judgment on Plaintiff's Title VII Retaliation Claim.

#### i.   Plaintiff Exhausted Her Administrative Remedies

Plaintiff exhausted her administrative remedies by detailing the facts underlying her Title VII retaliation claims in her EEOC Charge. Defendants' MSJ repeats an argument this Court rejected in its March 28, 2024 MTD Order. (Dkt. 23). Defendant previously argued, and now argues again, that Plaintiff did not exhaust her administrative remedies as to retaliation in her EEOC Charge. However, this Court, after reviewing the text of the Charge at issue, concluded:

> Defendant also argues [Ms. Buck-Yael's] claim was not exhausted because she asserted her retaliation claim under the National Labor Relations Act (NLRA), not Title VII, in her EEOC charge. However, the purpose of exhaustion is to provide the employer sufficient notice of Plaintiff's claim. *Russell v. TG Missouri Corp.*, 340 F.3d 735, 748 (8th Cir. 2003). Whether her EEOC charge of retaliation was made under the NLRA or Title VII is irrelevant. "The information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim, but it need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112,

10

> 1123 (8th Cir. 2006), *abrogated on other grounds by Torgerson*, 643 F.3d at 1031. The purpose is to generally identify the claim to provide notice to Defendant, which Plaintiff has done here. Therefore, the Court finds that Plaintiff properly exhausted her administrative remedies as to Count III."

(Dkt. 23, p. 11).

This Court concluded that Plaintiff put Defendant on notice of her claims, which is the purpose of exhaustion. *Id.* While Defendant does not appear to advance any new argument in its MSJ[3], Plaintiff reiterates that her Charge details Ms. Komeshak's religious harassment, Ms. Buck-Yael's unaddressed complaints to human resources, and WashU's retaliatory termination in response to Ms. Buck-Yael reporting the harassment. (SOAF ¶¶ 86-91). All of the aforementioned information in the Charge gave Defendant ample notice of Ms. Buck-Yael's retaliation claim, thus Defendant's argument on this point must be rejected.

### ii. Plaintiff's Protected Activity Was the But-For Cause of Her Termination.

Because Defendant subjected Ms. Buck-Yael to discipline and termination as a direct result of her Title VII-protected activity, namely complaining to her manager, human resources, and coworkers about the removal of her long-standing religious accommodations and related harassment, Defendant's MSJ should be denied as to Ms. Buck-Yael's retaliation claim.

Pursuant to the *McDonnell Douglas* burden-shifting framework, "the employee has the initial burden of establishing a prima facie case of retaliation, which she meets by showing that, '(1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct' . . . . If an

---

[3] Defendant has cited a few additional cases but they do not further its recycled exhaustion argument. *See, Cooper v. City of St. Louis,* No. 4:16-CV-1521, 2018 WL 3093504, at *4 (E.D. Mo. 2018) (Unlike Ms. Buck-Yael, the plaintiff "did not mention any retaliation nor check the box for retaliation in his EEOC charge."); *Bakhtiari v. Lutz,* 507 F.3d 1132, 1136 (8th Cir. 2007) (The case does not address the issue of exhaustion whatsoever.); *Swatzell v. Se. Missouri State Univ.*, No. 1:16-CV-00262 JAR, 2017 WL 3116150, at *4 (E.D. Mo. 2017) (The case, likewise, does not address the issue of exhaustion).

employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden then shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Garner v. VendTech-SGI, LLC*, No. 4:20CV85 JCH, 2021 WL 2042271 (E.D. Mo. May 21, 2021) (internal citations omitted) (denying summary judgment on retaliation claim due to fact issue on pretext, where plaintiff was denied firearm qualification support given to others outside the protected class).

As the Supreme Court explained, the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm[,]" and that the goal of the provision is to stop employers from deterring "victims of discrimination from complaining to the EEOC, the courts, and to their employers." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 61–67 (2006). Importantly, a "finding of unlawful retaliation . . . is not conditioned on the merits of the underlying discrimination complaint . . . . Title VII's prohibition against retaliatory discrimination protects activities ranging from filing a complaint to expressing a belief that the employer has engaged in discriminatory practices . . . . *A plaintiff need not establish the conduct which she opposed was in fact discriminatory* but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." *Buettner v. E. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000) (emphasis added) (citing *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986); *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1154-55 (8th Cir. 1989)).

Here, Defendant cannot dispute that Ms. Buck-Yael suffered an adverse employment action when it terminated her employment. *See, e.g., Hutchins v. A.G. Edwards & Sons,* 978 F.

12

Supp. 885, 891 (E.D. Mo. 1997) (A "[c]lassic example[] of [an] adverse employment action[] under Title VII include[s] . . . discharge . . . because of a statutorily protected activity in which the employee has engaged.") (internal citations omitted). Moreover, its arguments as to first and third elements of retaliation–protected activity and causation–are unavailing.

Ms. Buck-Yael engaged in protected activity on several occasions leading up to her retaliatory discharge. On October 22, 2019, Ms. Komeshak arbitrarily rescinded Ms. Buck-Yael's long-standing religious accommodation allowing her to use unpaid leave to cover religious holidays. (PRSOF ¶¶ 41, 64, 65-77, 81-82  SOAF ¶¶ 36, 41-52). The following day, on October 23, 2019, Ms. Buck-Yael raised concerns directly to Ms. Komeshak about Ms. Komeshak's removal of her long-standing religious accommodation. (PRSOF ¶¶ 41, 64; SOAF ¶¶ 39-40). In so doing, Ms. Buck-Yael explained:

> Approval for me to take Jewish Holidays off as time without pay rather than vacation days regardless of my available vacation day status was proposed, investigate and approved as an exception when I was first hired by CBMI. I was re-approved by [a former manager] once the Institute was established. Please let me know if this arrangement was information you did not have or if you wish to rescind[] the Institutes previously established arrangement without notice.

(SOAF ¶¶ 39).

On November 20, 2019, Ms. Buck-Yael also voiced her concerns directly to Ms. Komeshak via email that, given her diminished religious accommodation, she would have to forego vacation time to observe religious holidays. (SOAF ¶ 49). In response, Ms. Komeshak affirmed that—yes—Ms. Buck-Yael's vacation benefits would come at the cost of her religious practice. (PRSOF ¶¶ 70, 76; SOAF ¶ 33).

On November 27, 2019, Ms. Buck-Yael complained to human resources, and testified during her deposition that she raised concerns about Ms. Komeshak's management style,

including the needless revocation of her prior religious accommodations. (PRSOF ¶ 43; SOAF ¶¶ 50-51). Shortly after this meeting, on December 3, 2019, Ms. Komeshsak issued Plaintiff a verbal warning about creating a "toxic work environment," and referencing at least part of Plaintiff's human resources meeting. (PRSOF ¶ 55-56; SOAF ¶¶ 48, 53).

Shortly thereafter, on December 16, 2019, Ms. Buck-Yael complained to a coworker regarding Ms. Komeshak's unfair treatment and expressed that she believed Ms. Komeshack was out to fire her. (SOAF ¶¶ 54, 57). The *following day*, December 17, 2019, Ms. Komeshak fired Ms. Buck-Yael because of her reports of unfair treatment, and within one month of Ms. Buck-Yael's complaints to Ms. Komeshak and human resources about the recission of her religious accommodations. (SOAF ¶¶ 55-56). Although Defendant's MSJ argues that Ms. Buck-Yael was allegedly fired for reasons beyond her complaints about management, the record evidence suggests otherwise. In fact, Defendant's own corporate witness admitted that the reason Ms. Buck-Yael was fired was for her complaints about management. (SOAF ¶ 57).

Moreover, Defendant's MSJ remarkably cites the very protected activity at issue–Plaintiff's complaints to co-workers about management–as alleged misconduct. (Dkt. 54, p. 15). To the extent that Defendant claims Plaintiff's employment issues "pre-dated her November 2019 meeting with HR and she engaged in subsequent misconduct clearly justifying her termination," this argument is unpersuasive given that Defendant's corporate representative admitted, and her emails from the time of Ms. Buck-Yael's termination support, that the termination boiled down to Plaintiff's complaints about management. *Id.*

Defendant also astonishingly argues that Ms. Komeshak was unaware of her protected activity. However, Ms. Buck-Yael raised her religious accommodation concerns directly *to* Ms. Komeshak shortly before her discharge. (PRSOF ¶ 59; SOAF 54-58). Moreover, Ms. Komeshak

14

was aware of Ms. Buck-Yael's human resources complaint, which included the same grievances. (PRSOF ¶ 47; SOAF 50-52). Simply put, it is at the very least disputed that Ms. Komeshak was aware of Ms. Buck-Yael's protected activity, unlike the plaintiffs in Defendant's cited authority. *See, e.g., Porter v. City of Lake Lotawana*, 651 F.3d 894, 898-99 (8th Cir. 2011) and *Littleton v. Pilot Travel Centers, LLC*, 568 F.3d 641, 645 (8th Cir. 2009).

Further, the fact that Defendant's corporate representative, her internal communications, Defendant's discharge notice, and now its argument to this Court, present varying rationales for Ms. Buck-Yael's termination is telling. These shifting rationales evince that her termination was pretextual. *See, e.g., Jones v. Nat'l Am. Univ.*, 608 F.3d 1039 (8th Cir. 2010) (concluding plaintiff presented "sufficient evidence for the jury to conclude that [defendant's] proffered reason" for its adverse employment action was pretextual where plaintiff "presented evidence that between the time of its EEOC charge response and the trial, [defendant] shifted its reasons" for taking the adverse employment action.)

Because Ms. Buck-Yael has, at a minimum, established disputed material facts supporting that Defendant discharged her due to her internal complaints of harassment, Defendant's MSJ on retaliation must be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Aviva Buck-Yael respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in full. *See, e.g., Cruse v. Bi-State Dev. Agency of the Mo.-Illinois Metro. Dist.*, No. 4:20-cv-366-MTS, 2022 WL 1185149 at *6 (E.D. Mo. Apr. 21, 2022) (recognizing the fact-intensive nature of Title VII cases and denying summary judgment where the facts amounted to "a 'he-said-she-said' type situation.") (internal citations omitted).

Respectfully submitted,

By:    */s/ Mary F. Charlton*

The Prinz Law Firm, P.C.
Kristen E. Prinz (kprinz@prinz-lawfirm.com)
Mary F. Charlton (mcharlton@prinz-lawfirm.com)
Rebecca E. Baba (rbaba@prinz-lawfirm.com)
1 East Wacker Drive, Suite 1800
Chicago, IL 60601
P: (312) 212-4450
F: (312) 284-4822

*Admitted pro hac vice*

*Attorneys for Plaintiff Aviva Buck-Yael*

16

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of May 2025, the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served via email upon all counsel of record via CM/ECF.

*/s/ Mary F. Charlton*
Mary F. Charlton