IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AVIVA BUCK-YAEL, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:23-cv-00492-JAR |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

## **UNIVERSITY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Washington University ("University") asks this Court to grant it summary judgment.

## **INTRODUCTION**

Plaintiff's Response confirms that the University is entitled to judgment. With regard to her hostile work environment claim, Plaintiff concedes that it is primarily based on her false assertion that the University "rescinded" her religious accommodations. Plaintiff has waived this argument and even if she had not, her binding admissions establish that this assertion is untrue. The undisputed facts demonstrate that the conduct Plaintiff complains of does not approach "severe or pervasive" harassing conduct. Moreover, Plaintiff cannot establish that her religion was the "but-for" cause of any purportedly harassing conduct. The University is entitled to judgment on Plaintiff's hostile work environment claim.

Plaintiff's retaliation claim fails because she did not engage in any protected activity under Title VII. Plaintiff's Response suggests that the activity she engaged in was complaining to coworkers about her supervisor, which theoretically could constitute concerted activity under the National Labor Relations Act (NLRA) but is ***not*** protected activity under Title VII.[1]

---

[1] Plaintiff similarly alleged in her Charge of Discrimination that her complaint was concerted activity under the NLRA, not protected activity under Title VII.

Plaintiff's claim also fails because it is undisputed that her supervisor was unaware of any protected activity when she terminated Plaintiff. Plaintiff cannot establish that protected activity was the "but-for" cause of her termination or that she was terminated for anything other than legitimate, non-discriminatory reasons. Therefore, the University is entitled to judgment on Plaintiff's retaliation claim.

## **LEGAL ARGUMENT**

### I.    **PLAINTIFF'S RESPONSE PRESENTS NO DISPUTE OF MATERIAL FACT.**

"Rule 56(c)(1) requires that a party asserting that a fact is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record or (B) showing that the materials cited do not establish the absence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bumbales v. City of Vandalia*, No. 2:18-CV-13-JMB, 2018 WL 3575085, at *2 (E.D. Mo. July 25, 2018) (citing Fed. R. Civ. P. 56(c)(1) (cleaned up). "A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Id*. (quoting *Pederson v. Biomedical App. of Minn*, 775 F.3d 1049, 1053 (8th Cir. 2015)). It is the non-movant's burden to put forth "sufficient probative evidence [that] would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Id*. (quoting *Barber v. C1Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)).

Plaintiff fails to establish any dispute of material fact and the University is entitled to judgment. Plaintiff admits 37 of 91 of the University's Statement of Undisputed Material Facts ("SUMF"). For the remaining 50+ facts that Plaintiff "disputes," she does not cite to admissible evidence to refute the fact asserted, as required. *See* Rule 56.c. Instead, Plaintiff mainly "disputes

and objects" based on her disagreement with the University's characterization of quoted deposition testimony or exhibits. For example, Statement of Fact (SOF) 51 states:

> After both the February 2019 Written Warning and the Final Written Warning, Plaintiff continued to approach coworkers individually, to question them about whether they felt her behavior was inappropriate. P's Depo, **Exhibit 2**, p. 166 ("Q: So after this meeting, my understanding is that you approached colleagues to question them about your behavior with them about you being condescending or unhelpful. Is that a fair characterization of what you did after this meeting? A: I did speak with co-workers about their recollections of events in meetings so that I could document everything for HR.").

In response, Plaintiff stated:

> Plaintiff disputes and objects to SOF 51 on the basis that the cited testimony does not support it. Nothing in Plaintiff's cited testimony supports that she "continued to approach coworkers individually to question them about whether they felt her behavior was inappropriate." (*See*, testimony cited in SOF 51).

Plaintiff "disputes and objects" to SOF 51 because she disagrees with the University's choice to describe her behavior as "inappropriate" instead of "condescending or unhelpful."[2] This semantic disagreement does not create a dispute of material fact. Plaintiff admits in the cited testimony that she continued to corner coworkers about her behavior after she was warned not to.

Plaintiff's Statement of Additional Material Facts ("SOAF") similarly does nothing to defeat summary judgment. The SOAF consists of background statements about Plaintiff's job (which are immaterial and primarily undisputed); undisputed, immaterial facts regarding the lack of a written University religious accommodation policy; and inadmissible opinion and hearsay testimony from a non-decision-maker coworker about his opinion as to whether Plaintiff's supervisors subjected her to a hostile work environment.

---

[2] As another example, in numerous responses, Plaintiff objects that various terms are "vague" or "argumentative." *See, e.g.,* SOF 35. These are not proper objections and do nothing to dispute the fact asserted or establish there is a dispute of material fact.

3

The University does not dispute that it does not have a written religious accommodation policy. This fact does not in any way establish that Plaintiff was subjected to a hostile work environment or retaliated against. Plaintiff does not cite to any case with such a holding, nor can she, as courts in this Circuit have repeatedly held that the lack of a formal policy is **not** evidence of discrimination or retaliation. *See Mekasha v. Tyson Fresh Meats, Inc*., 710 F.Supp.3d 647, 656 (S.D. Iowa 2024) (holding that the lack of a formal policy does not establish a Title VII claim and further stating "the presence or absence of a formal policy is not the relevant issue; instead, the question is whether Tyson genuinely fired him for his perceived lack of candor") (citing *Scarborough v. Fed. Mut. Ins*., 996 F.3d 449, 507 (8th Cir. 2021)).

The affidavit submitted by David Heskett, a non-decision-maker, regarding his inadmissible opinion and speculation about whether Ms. Komeshak liked Plaintiff similarly does not create a disputed material fact. Plaintiff cannot defeat summary judgment by relying on inadmissible evidence. *See* Rule 56.c.2; *Jefferson v. MHM Support Servs*., No. 4:24-CV-1308-CDP, 2025 WL 1380138, at *2 (E.D. Mo. May 13, 2025) (holding that "speculation, personal opinion, and legal conclusions are not 'facts' upon which a party may rely for summary judgment purposes"). Further, some of Mr. Heskett's admissions actually support summary judgment. For example, Mr. Hesket admits that **both** he and Plaintiff were criticized "in a threatening tone" by Ms. Komeshak, i.e. he admits that Plaintiff was not the only person Ms. Komeshak was critical of. SOAF ⁋ 58. Mr. Heskett also states that, during a conversation with Ms. Komeshak and Plaintiff, he felt Ms. Komeshak was "extremely angry and upset" about an email Plaintiff sent which formed the basis of Plaintiff's November 2019 Final Written Warning. P's Ex. 2, ⁋ 40. Mr. Heskett thus admits that Plaintiff's write-up was based on Ms. Komeshak's legitimate, non-discriminatory concerns regarding Plaintiff's performance.

4

The bottom line is that Plaintiff's, or even Mr. Heskett's, subjective disagreement with Ms. Komeshak's assessment of Plaintiff's behavior and how she addressed these concerns does not create any genuine issue of disputed fact that would defeat summary judgment. *See Kendall v. Zoltek Corp.*, No. 4:22-CV-01119-JAR, 2025 WL 304595, at *4 (E.D. Mo. Jan. 27, 2025) (an "employee's subjective belief [regarding her job performance] . . . is irrelevant").[3]

As Plaintiff's response to the University's SUMF and her SOAF do not create any dispute of material fact, the University is entitled to judgment as a matter of law.

## II.  PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS.

### A.  Plaintiff cannot establish conduct an actionable hostile work environment.

Plaintiff's Response makes clear that her hostile work environment claim comes nowhere close to reaching the "demanding" standard required to establish a poisoned work environment "permeated with discriminatory intimidation, ridicule, and insult" that is "so severe or pervasive" that the terms and conditions of employment are altered.[4] Plaintiff admitted she was not ridiculed or insulted based on her religion (SUMF ⁋ 64) and she put forth no evidence that she was subjected to any conduct that rises to the level of an actionable hostile work environment.

In fact, Plaintiff concedes that her hostile work environment claim is primarily premised on what she calls "diminish[ment of her] religious accommodations." P's Response, p. 5-6. But,

---

[3] *See also Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821-22 (8th Cir. 2017) ("the critical inquiry ... is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge") (citation omitted); *Colyer v. Leadec Corp.*, 2024 WL 81183, at *9-10 (E.D. Mo. 2024) ("To prove that the employer's explanation was false, *the employee must show the employer did not truly believe that the employee violated company rules*…. [A] plaintiff may not establish pretext simply by showing that the employer's 'honest' belief was erroneous, unwise, or even unfair.") (original emphasis, citations omitted).
[4] *Duncan v. GM*, 300 F.3d 928, 934 (8th Cir. 2002) ("To clear the high threshold of actionable harm, [an employee] has to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult."); *Watson v. Heartland Health Labs.*, 790 F.3d 856, 861 (8th Cir. 2015) (conduct must be "so intimidating, offensive, or hostile that it poisoned the work environment"); *Meinen v. Bi-State Dev. Agency*, No. 4:22-CV-00620-JAR, 2023 WL 156857, at *4 (E.D. Mo. 2023) (noting that "standards for a hostile environment are demanding").

5

as noted in the University's Motion for Summary Judgment, Plaintiff's standalone failure to accommodate claim was dismissed by this Court in March of 2024. University's Motion for Summary Judgment ("MSJ"), p. 6. In her Response, Plaintiff fails to address this dispositive argument or the cases cited by the University in support of it. Her failure to do so constitutes a waiver of this argument and the University is entitled to summary judgment on this basis alone. *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (holding that "failure to oppose a basis for summary judgment constitutes waiver of that argument" and upholding summary judgment because it was plaintiff's "responsibility to show that there were genuine issues of material fact in the record that precluded the summary judgment").

Even if this Court were inclined, contrary to the instruction of the Eighth Circuit, to "mine [the] summary judgment record searching for nuggets of factual disputes to gild a party's arguments," *id*., and permit Plaintiff to press forward with what is essentially a claim that this Court already dismissed, Plaintiff's arguments regarding the University's "targeting" of her accommodations are factually and legally unsupported.

First, Plaintiff's allegation that the University "burdened [her] observance of the Sabbath" by taking away the floating work from home day is unequivocally false. P's Response, p. 6. It is beyond dispute that the floating work from home day ***was not*** a religious accommodation granted to Plaintiff. Rather, as Plaintiff admitted, this was a privilege for ***all*** team members at the time, since they were occasionally required to work outside of regular business hours. SUMF ¶ 78-79 (Plaintiff does not dispute SOF 78 and does not provide any facts to dispute SOF 79). After this privilege was removed for all REDCap employees in October of 2019, Plaintiff ***for the first time*** requested an accommodation to work longer hours Monday

6

through Thursday and leave work early on Friday to get home prior to sundown so she could observe the Sabbath. This accommodation was promptly granted. SUMF ¶ 82-84 (undisputed).

Plaintiff now shockingly claims that granting her requested accommodation is somehow evidence of discrimination because it required her to "work longer hours Monday through Thursday." P's Response, p. 6. This completely ignores the fact that *it was Plaintiff herself who requested this exact accommodation*. In a November 1, 2019 Teams message, Plaintiff stated:

> I would like to initially propose setting my work hours for 9 hours Monday through Thursday and 4 hours on Friday to eliminate any time concerns with being home prior to Sunset on Fridays. Would this be a feasible arrangement?

SUMF ¶ 82 (undisputed, citing **Ex. 26**). Plaintiff does not dispute that the University swiftly granted Plaintiff's proposal. SUMF ¶ 83-84. It is disingenuous to suggest that the University granting the exact accommodation Plaintiff requested is somehow evidence of mistreatment.

Plaintiff's Response goes even further in its disingenuousness. She argues that Ms. Komeshak permitted this new work schedule "even after [Plaintiff] informed her that she has had to abandon her car on the side of the road when trying to reach home in time for sundown." P's Response, p. 6. This is an outright misrepresentation of the record. In response to Plaintiff's Friday, November 1st message requesting the accommodation above, Ms. Komeshak emailed Plaintiff the following Monday and granted her request. Ms. Komeshak expressly stated:

> I'm happy to make Friday a shortened work day and trust that you can adjust your other four days accordingly. *I certainly don't want you in a situation where you would need to abandon your car*, etc. so let's plan to have you out of the office by 12-1 on Fridays – so that this isn't a concern."

*Id*. (emphasis added).

In sum, Ms. Komeshak granted the exact accommodation Plaintiff requested the next business day and expressly stated that she *did not* want Plaintiff to have any interference with her need to be home by sundown. This is the opposite of "targeting" Plaintiff's religious practice.

7

Plaintiff cannot establish she was subjected to a "severe or pervasive" hostile work environment by the University granting the exact accommodation she requested within one business day.

Second, with regard to Plaintiff's leave requests, Plaintiff admits she was *never* denied leave for any religious observance. SUMF ¶ 75-77. On this basis alone, Plaintiff's argument fails. The University realized it had failed to require depletion of Plaintiff's paid leave before granting unpaid leave, as required by the University's practice, and thereafter informed Plaintiff that it would rectify the leave procedure going forward. This did not result in Plaintiff being treated "less favorably than non-Orthodox Jewish employees," as she claims. P's Response, p. 5. Bringing Plaintiff into compliance with its standard practice for *all* employees, an action that did *not* impact Plaintiff's ability to take leave for religious holidays, by Plaintiff's admission, is not a denial of an accommodation and cannot form the basis of a hostile work environment claim.[5]

Plaintiff points to no other evidence of harassing conduct that comes close to approaching the "extreme" behavior required to establish a hostile work environment "permeated with discriminatory intent, ridicule, and insult." *Duncan*, 300 F.3d at 934. Instead, she cites to a block quote from this Court's denial of the University's Motion to Dismiss. P's Response, p. 6. However, at the motion to dismiss stage, Plaintiff's allegations are accepted as true. At the summary judgment stage, Plaintiff has to put forth admissible evidence establishing the presence of a genuine dispute to defeat the University's entitlement to judgment as a matter of law.[6]

Based on the undisputed evidence (primarily Plaintiff's own admissions), it is now clear that the allegations this Court relied on when denying the Motion to Dismiss are unfounded and

---

[5] *See, e.g.*, *Clayton v. DeJoy*, No. 4:18-CV-01039-JAR, 2020 WL 6822641, at *11 (E.D. Mo. Nov. 20, 2020) (granting summary judgment when employee did not claim any abusive or offensive behavior and claim was based primarily on the employer moving her accommodation).

[6] *See* Rule 56; *Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 n.3 (8th Cir. 1996) ("The standards for dismissing a complaint under Rule 12(b)(6) and the standards for granting summary judgment are substantially different.").

do not remotely satisfy Plaintiff's stringent evidentiary burden of establishing a "severe or pervasive" hostile work environment based on Plaintiff's religion.

The Court cited the following allegations in its denial of the Motion to Dismiss:

- *Plaintiff was "repeatedly berated in front of her colleagues."* It is beyond genuine dispute that this allegation is untrue. There is absolutely no evidence that Ms. Komeshak ever "berated" Plaintiff. SUMF ¶ 64. The criticism Ms. Komeshak leveled against the REDCap team was directed to ***all*** team members – not just Plaintiff. SUMF ¶ 18. Moreover, Plaintiff admitted that her religion was not discussed or mentioned during meetings in which Ms. Komeshak was critical of the entire REDCap team. SUMF ¶ 19.

- *Plaintiff was "barred" from attending a conference she had previously attended.* The undisputed evidence establishes that ***the entire REDCap team*** was not permitted to attend the 2019 conference because of budget issues. SUMF ¶ 24-29 (undisputed). Plaintiff admitted that no one mentioned her religion during any discussions regarding the conference. SUMF ¶ 30 (undisputed).

- *Plaintiff was "falsely accused of being described as condescending and unhelpful."* The evidence conclusively establishes Plaintiff's coworkers repeatedly complained to management about her problematic behavior. SUMF ¶¶ 12, 37, 53. Plaintiff's subjective opinion about whether her behavior was improper cannot defeat summary judgment.[7]

- *The University "withdr[ew Plaintiff's] religious accommodations."* As outlined above, it is beyond genuine dispute that this is untrue. Plaintiff admitted she was permitted to take leave for every religious holiday she requested off. SUMF ¶ 77. She also admitted that she was never required to work on the Sabbath. SUMF ¶ 85. As discussed above, an employer's alleged failure to accommodate is a standalone claim and cannot form the basis of Plaintiff's hostile work environment claim (an argument Plaintiff waived).

- *The University "fil[ed] two false written warnings against her . . . under false pretenses."* Again, Plaintiff's subjective disagreement with her write-ups does not make them "false" or establish they were motivated by her religion, nor does it establish they were not based on her supervisor's genuinely held assessment of her conduct.[8]

---

[7] "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007); *Newell v. McDonnell Douglas Corp.*, No. 4:92CV2239SNL, 1994 WL 880432, at *6 (E.D. Mo. Aug. 31, 1994) ("Plaintiff's own subjective beliefs are not evidence of age discrimination, especially when faced with the affidavits of the people actually involved in the decision to select the plaintiff for lay-off.").

[8] Plaintiff's also claims Ms. Komeshak "engaged in gossip and profanity regarding [Plaintiff] to other WU employees . . ." P's Response, p. 5. Plaintiff cannot establish that such statements "impacted a term and condition of her employment" because she does not claim or cite any evidence that she was aware of Ms. Komeshak's statements while she was employed. *See LaBlance v. Missouri Dep't of Corr.*, No. 19-00693-CV-W-BP, 2021 WL 5541945, at *4 (W.D. Mo. Jan. 13, 2021) (granting summary judgment on hostile

In sum, the actual *evidence* adduced in this case after the Court denied the Motion to Dismiss based on Plaintiff's (demonstrably false) *allegations* irrefutably establishes that Plaintiff cannot meet the "demanding" standard of establishing an objectively hostile work environment.

**B. Plaintiff cannot establish that her religion was the "but-for" cause of any purportedly harassing conduct.**

Plaintiff points to misleading quotes from several cases for her argument that she should prevail on her hostile work environment claim even though the conduct she experienced was not related to her religion. P's Response, p. 8 ("Defendant's assertion that at least some of [Ms. Komeshak's] bullying and harassing behavior may have been motivated by non-religious factors does not imperil Plaintiff's hostile work environment claim."). This is obviously not the law. *See Clobes v. 3M Co.*, 106 F.4th 803 (8th Cir. 2024) (noting that a hostile work environment plaintiff must establish that her religion was the "but-for" cause of the harassing behavior). And the cases cited by Plaintiff support the opposite conclusion.

Plaintiff first quotes *Hathaway v. Runyon*: "Not every aspect of a work environment characterized by hostility and intimidation need be explicitly sexual in nature to be probative." P's Response, p. 8 (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1222 (8th Cir. 1997)). But the Eighth Circuit went on to say in the very next sentence that "[t]he critical inquiry is 'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Hathaway*, 132 F.3d at 1222. The *General Motors* case cited by Plaintiff similarly states: "Even the actions and comments by [a coworker] that

---

work environment claim and noting that "while some of Plaintiff's co-workers looked in her personal file while she was employed, none of them mentioned this to her while she was employed and she did not learn of this fact until after she resigned"); SOAF ¶ 31.

10

were not explicitly racial or sexual may constitute discrimination *if they were directed at members of a protected class more than toward individuals who are not in a protected class*."[9]

These cases do not relieve Plaintiff of her burden to prove that her religion was the "but-for" cause of the purported hostile work environment. *See Marin v. TVS Supply Chain Solutions*, No. 4:24-CV-00901-JAR, 2024 WL 4826792, at *6-7 (E.D. Mo. Nov. 19, 2024) (dismissing hostile work environment claim based on failure to allege "causal nexus" between religion under "but-for" causation standard). Instead, these cases uniformly hold that, if the alleged harasser does not use discriminatory terms or epithets, an employee can still prevail by showing the conduct was directed toward her and not employees outside her protected class. Plaintiff's cited cases provide strong support for summary judgment for the University because Plaintiff admitted the treatment she experienced was directed not just to her, but to other members of her team outside of her protected class. *See, e.g.*, SUMF ¶¶ 18-20, 24-30 (noting that Ms. Komeshak's criticisms and the denial of conference attendance were directed at all team members). These admissions, coupled with the case law cited by Plaintiff, establish that Plaintiff's religion was *not* the "but-for" cause of any purportedly harassing behavior Plaintiff experienced.[10]

Plaintiff's Response demonstrates that she did not suffer any "severe or pervasive" conduct rising to the level of an actionable hostile work environment and that her religion was

---

[9] *E.E.O.C. v. Gen. Motors Corp.*, 11 F. Supp. 2d 1077, 1081 (E.D. Mo. 1998) (emphasis added). The *Quick* and *Burns* cases cited by Plaintiff contain identical holdings, which Plaintiff fails to disclose, a sentence or two after the cherry-picked quotations she cites. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1379 (8th Cir. 1996) ("The proper inquiry for determining whether discrimination was based on sex is whether 'members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'"); *Burns v. McGregor Elec. Indus.*, 989 F.2d 959, 965 (8th Cir. 1993) ("[A]ny harassment or unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII.").

[10] *See Segabandi v. Pinnacle Tech.*, 2016 WL 3569747, at *6 (E.D. Mo. 2016) (no discrimination where "plaintiff was treated exactly as similarly situated [employees outside the protected class]"); *Henry v. Hobbs*, 824 F.3d 735, 740 (8th Cir. 2016) (similar treatment of employees outside plaintiff's protected class "undermines" claim).

not the "but-for" cause of any purportedly harassing conduct. In sum, Plaintiff has no factual or legal support for her hostile work environment claim and the University is entitled to judgment.

### III. THE UNIVERSITY DID NOT RETALIATE AGAINST PLAINTIFF.

Plaintiff's Response confirms that the allegedly "protected activity" she engaged in is conduct protected under the NLRA—not Title VII.[11] Plaintiff expressly concedes that "the very protected activity at issue—[is] Plaintiff's complaints to coworkers about management." P's Response, p. 14; *see also id*. (claiming she was fired "for her complaints about management" to her coworkers and that she "complained to a coworker regarding Ms. Komeshak's unfair treatment and expressed that she believed Ms. Komeshak was out to fire her"). Complaints to coworkers about management might be protected concerted activity under the NLRA, but such complaints cannot form the basis of a Title VII retaliation claim, as a matter of statutory text and well-established black letter law.[12] The University is entitled to judgment because Plaintiff cannot prevail on a Title VII claim premised on complaints of alleged NLRA concerted activity.

Plaintiff next argues that various conversations with her supervisor regarding accommodations constitute complaints about religious discrimination. For instance, Plaintiff points to an email with Ms. Komeshak about whether she would be entitled to take unpaid leave before exhausting paid leave. P's Response, p. 13. In this email, Plaintiff asks whether Ms. Komeshak wishes to rescind the previous arrangement. *Id*. Nowhere in this exchange does Plaintiff oppose any employment practices prohibited under Title VII – which she is required to

---

[11] As outlined in the University's MSJ, Plaintiff's Charge similarly only alleged that she engaged in NLRA concerted activity and, because she failed to claim that she engaged in Title VII protected activity, she did not administratively exhaust a Title VII retaliation claim. MSJ, p. 9.
[12] *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1136 (8th Cir. 2007) (complaint about violation of other laws "is not a protected activity within the scope of Title VII retaliation provisions"); *Swatzell v. Se. Missouri State Univ.*, No. 1:16-CV-00262 JAR, 2017 WL 3116150, at *4 (E.D. Mo. 2017) (dismissing Title VII retaliation claim based on activity protected by other statutes).

do to state a claim. *Brown v. Preferred Fam. Healthcare*, No. 1:24-CV-180, 2025 WL 636961, at *4 (E.D. Mo. Feb. 27, 2025). Plaintiff's conversations with her supervisor to discuss accommodations are not protected activity under Title VII. *EEOC v. North Memorial Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018) (denial of accommodation "is no basis for an opposition-clause retaliation claim under §2000e-3(a)" and "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation"). Plaintiff cannot rely on these conversations to support her retaliation claim.

The only arguably protected activity Plaintiff engaged in was on November 27, 2019, when she claims she went to HR to "discuss[] the religious accommodations that . . . were removed." SUMF ¶ 45. Plaintiff implies that Ms. Komeshak must have been aware of the substance of the complaints because Ms. Komeshak knew that Plaintiff met with HR. P's Response, p. 14-15. But Plaintiff does not refute the key fact that Ms. Komeshak was not informed about the substance of Plaintiff's complaint prior to Plaintiff's termination—and the undisputed evidence establishes that Ms. Komeshak was ***not*** aware of what Plaintiff told HR. SUMF ¶ 46-48. As a matter of logic and law, the decision-maker's lack of knowledge regarding Plaintiff's alleged protected activity is fatal to her retaliation claim. *See* MSJ p. 12-13.

Further, ***prior*** to any purported protected activity, on September 18, 2019, Ms. Komeshak reached out to HR asking to move forward with terminating Plaintiff (SUMF ¶ 49), a fact that is fatal to her retaliation claim. *See Brown v. Kansas City*, 2024 WL 189081, at *14 (W.D. Mo. 2024) (dismissing retaliation claim where "termination was effectively set in motion … before [plaintiff] made her complaint").

Plaintiff's retaliation claim further fails because she does not and cannot present any evidence that the basis for her termination was anything other than legitimate, non-retaliatory

13

issues—namely, Plaintiff's "ongoing issues with [her] ability to work collegially, collaboratively, and maintain a healthy work environment with other members of [the team]." SUMF ¶ 61 (quoting termination letter, **Ex. 22**). Plaintiff was repeatedly warned that confronting coworkers about her conflict with Ms. Komeshak was making them uncomfortable, yet she continued to do so. *Id*. Ultimately, when new team members continued to reach out to Ms. Komeshak regarding the "uncomfortableness of the working environment" caused by Plaintiff, Ms. Komeshak decided to terminate Plaintiff. *Id*. Plaintiff admits that these "complaints about management" to her coworkers – which the coworkers in turn complained to Ms. Komeshak about – were the reason for her termination. P's Response, p. 14 ("Defendant's own corporate witness admitted that the reason [Plaintiff] was fired was for her complaints about management."). Plaintiff's subjective disagreement with the basis for her termination does not transform Ms. Komeshak's legitimate concerns regarding Plaintiff into a retaliatory firing. *See Greene v. Boeing Co.*, No. 4:14-CV-741 RLW, 2016 WL 11668661, at *6 (E.D. Mo. Jan. 8, 2016) (the plaintiff's "disagreement with the negative assessments of his performance is not evidence of pretext").[13]

Plaintiff's Response does not include *any* evidence to meet the high burden of establishing that any Title VII protected activity was the "but-for" cause of her termination.[14] On the contrary, her retaliation claim is a prime example of why courts warn against the "risk that employees who anticipate discipline or adverse actions might preemptively engage in protected

---

[13] Plaintiff includes a throwaway argument that the University presented "varying rationales for [Plaintiff's] termination," which she contends demonstrates pretext. P's Response, p. 15. But she does not explain, much less cite to any evidence, regarding what purported "shifting rationales" she is referring to – and there are none.

[14] *Harrell v. Robinson*, 703 Fed. App'x 440, 444 (8th Cir. 2017) ("It is not sufficient to establish only that [protected activity] was a substantial or motivating factor in the employer's decision, for it must be shown to have been dispositive."); *Walker v. Mo. Dept. of Corr.*, 2022 WL 2007393, at *8 (W.D. Mo. 2022) (no but-for causation if terminated "at least in part" for non-retaliatory reasons).

14

conduct to complicate or forestall such discipline or to set the stage for later retaliation claims." Courts routinely emphasize that employees on notice of complaints about their behavior cannot "insulate" themselves from discipline by claiming discrimination, because this "does not clothe the complainant with immunity."[15] The law's anti-retaliation provisions are "not a cudgel to be wielded by underperforming and unprofessional employees,"[16] and "complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy."[17]

In sum, Plaintiff fails to establish her retaliation claim in every conceivable way. Plaintiff cannot establish (1) that she engaged in Title VII protected activity (or that she alleged protected activity in her Charge); (2) that the decision-maker was aware of any alleged Title VII protected activity; or (3) that the purported Title VII protected activity was the "but-for" cause of her termination. And the undisputed facts establish Plaintiff was terminated based on Ms. Komeshak's legitimate ongoing concerns regarding Plaintiff's behavior that pre-dated her HR complaint and which prompted Ms. Komeshak to initiate termination prior to that complaint.

## CONCLUSION

The undisputed facts demonstrate that Plaintiff's claims are factually and legally deficient and the University respectfully requests this Court grant summary judgment on these claims.

---

[15] *Jackson v. Gen. Motors*, 2020 WL 3469334, at *32 (E.D. Mo. 2020); *Couch v. American Bottling*, 955 F.3d 1106, 1109 (8th Cir. 2020); *Haynie v. Washington Univ.*, No. 4:22CV672 JAR, 2023 WL 6879670, at *9 (E.D. Mo. 2023) ("The Eighth Circuit has often expressed an inclination to discount temporal proximity due to the perceived risk that employees who anticipate discipline or adverse actions might preemptively engage in protected conduct to complicate or forestall such discipline or to set the stage for later retaliation claims.").
[16] *Brown v. City of Jacksonville*, 711 F.3d 883, 894 (8th Cir. 2013).
[17] *Carrington v. City of Des Moines*, 481 F.3d 1046, 1051 (8th Cir. 2007).

RESPECTFULLY SUBMITTED,

**TUETH KEENEY COOPER MOHAN & JACKSTADT, P.C.**

By: */s/ Mollie G. Mohan*
   Mollie G. Mohan, #64754MO
   Sarah P. McConnell, #74216MO
   34 N. Meramec Avenue, Suite 600
   St. Louis, MO  63105
   Tel: (314) 880-3600
   Fax: (314) 880-3601
   mmohan@tuethkeeney.com
   smcconnell@tuethkeeney.com

   *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on this 20th day of June 2025, the foregoing was served via email upon all counsel of record.

*/s/ Mollie G. Mohan*